**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| SCOTT JOHANNESSEN AND MERIDIAN VENTURE PARTNERS, LLC, a limited liability company, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.  3:13-cv-00296 |
| v. | ) ) ) | Judge Haynes |
| BAC HOME LOANS SERVICING, LP, a limited partnership.; BANK OF AMERICA, N.A.,  a corporation; and QUALITY LOAN SERVICE CORP., a corporation, | ) ) ) ) ) | Magistrate Judge: Griffin |
| Defendants. | | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant, Bank of America, N.A. ("BANA") has filed a Motion to Dismiss the Amended Complaint on various grounds.  This Brief is submitted in support of the Motion to Dismiss.

## FACTS

Plaintiff, Scott Johannessen, filed this action asserting various claims and causes of action arising out of a mortgage loan transaction and BANA's efforts to foreclose upon the property. BANA filed a motion to dismiss, but before the Court acted on the motion, an amended complaint adding a new party was filed.  The amended complaint is 30 pages long, contains 146 paragraphs (down from 40 pages and 220 paragraphs).[1]  While the amended complaint supersedes the original complaint, no exhibits were attached to it although the amended complaint purports to cite to some of those 263 pages of documents that were exhibits to the original complaint.

---

[1] The amended complaint supersedes the original complaint and renders the original complaint a nullity.

7/3156354.1

Plaintiffs assert various acts and conduct allegedly giving rise to their claims and causes of action, but as shown below, those claims and causes of action fail to state a claim upon which relief can be granted.

The following appears to be the relevant factual allegations upon which plaintiffs' claims are based.

Prior to 2006, Plaintiff, Scott Johannessen, owned rental property located in Sacramento, California ("the Cagney Court Property") that he now asserts had previously been his family home. In 2006, Scott Johannessen conveyed the property to himself and his wife, Lorrie Ann Johannessen, to create joint ownership. In December 2006, Plaintiff and his wife applied for a loan to be secured by the rental property. As part of loan application process, Mr. and Mrs. Johannessen acknowledged that the Cagney Court Property was "Investment" property.

On December 8, 2006, Plaintiff and his wife executed a Promissory Note in the original principal sum of $262,500 payable to Sierra Pacific Mortgage Company, Inc. A copy of the note is attached as Exhibit A to the motion to dismiss. The loan was secured by a deed of trust granting a lien on the Cagney Court Property. The deed of trust identifies MERS as "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this security Instrument." A copy of the deed of trust is attached as Exhibit B to the motion to dismiss.

Subsequently, in 2008, Plaintiff and his wife conveyed the property to a Tennessee Limited Liability company known as Meridian Venture Partners LLC ("Meridian"). Plaintiffs allege that Countrywide Home Loans knew of the transfer since November 2008. Amended Compl. ¶ 16.

2

Plaintiffs sequence skips forward to September 2011 when they allege that MERS executed an assignment of the deed of trust to BANA, "successor by merger to BAC Home Loans Servicing LP FKA Countrywide Home Loans servicing LP.[2] Amended Compl. ¶ 17. A copy of the Assignment of the Deed of Trust is attached as Exhibit C to the motion. Plaintiffs allege that defendants did not provide notice of the MERS assignment and a completed copy of the "Mortgage Loan" until October 2012. Plaintiffs also contend, without citation to any authority, that the MERS assignment was void under California law.

Plaintiffs allege that "Plaintiff and Meridian" solicited information from BANA as to a loan modification. Amended Compl. ¶ 19. However, plaintiffs contend they were told that the loan modification was unlikely so long as the loan was a "performing loan." Plaintiffs contend that BANA "instructed Plaintiff" not to make any further payments.

Plaintiffs state that in February 2012 Johannessen submitted what he claims to be a Qualified Written Request ("QWR")[3] that has gone unanswered. Plaintiffs contend that since May 2011, they have solicited information from BANA that has gone unanswered.

Plaintiff asserts that his wife filed a Chapter 13 bankruptcy in March 2012 and the automatic stay was in place preventing BANA from foreclosing on the Cagney Court Property.[4]

---

[2] Attached hereto is a copy of the filing by Countrywide Home Loans Servicing LP reflecting its name change to BAC Home Loans Servicing LP ("BAC") effective April 27, 2009. BAC merged into BANA effective July 1, 2011.

[3] 12 U.S.C. §2605 sets forth what a QWR is: (B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that-- (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

[4] Because the Johannessens had no ownership interest in the property upon filing the Chapter 13, the stay under 362 would not have applied. At that time, the property was owned by Meridian.

3

In addition, he claims that a codebtor stay was in place following his wife's Chapter 13 filing. Amended Compl. ¶ 24.

The bankruptcy court, by order dated June 14, 2012, noted that Ms. Johannessen had no interest in the Cagney Court Property at the time of filing the Chapter 13 and that the automatic stay was terminated to permit recovery and disposition of the surrendered property by BANA as the secured creditor. Exhibit D to the motion to dismiss.

Plaintiffs claim that in July 2012 BANA initiated foreclosure proceedings on the Cagney Court Property. Plaintiffs claim that this action constitutes a violation of RESPA and state and federal FDCPA, and claims this is a violation of the codebtor stay.[5] Amended Compl. ¶ 25. BANA temporarily halted the foreclosure but rescheduled it for August. BANA refused to call off the sale and Meridian, as owner of the property and being represented by plaintiff, filed a Chapter 11 bankruptcy proceeding in the Middle District of Tennessee, Case no. 3:12-07594. Amended Compl. ¶ 27.

In Paragraph 26, plaintiffs assert that the bank's actions in initiating foreclosure caused the Cagney Court Property's rental tenants to vacate the property, or as he described it, become "un-tenantable." He claims that the lack of rental income has adversely affected his ability to make the mortgage payments.

Based on these claims, Plaintiffs have asserted numerous causes of action but all seem to be centered around an assertion that the attempted foreclosure, while no answers were provided to the QWR, constitute violations of the FDCPA or the co-debtor stay.

---

[5] The automatic stay was lifted on June 14, 2012.

4

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." In ruling on a pending motion to dismiss, all of the well-pleaded factual allegations in Plaintiff's complaint must be accepted as true and construed in the light most favorable to Plaintiff. *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). But "[t]he standard of review 'requires more than the bare assertion of legal conclusions.' And, this Court 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Bovee v. Coopers & Lybrand C.PA*., 272 F.3d 356, 361 (6th Cir. 2001) (citations omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). More specifically, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quotation omitted). To survive a Rule 12(b)(6) motion, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *LULAC*, 500 F.3d at 527.

Pursuant to Rule 8, "A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction ...; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." *See* Fed. R. Civ. P. 8(a). A

5

complaint may be dismissed under Fed. R. Civ. P. 8(a) where it fails to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 127; *Iqbal*, 129 S.Ct. at 1949. A complaint must not be "so vague or ambiguous that a party cannot reasonably be expected to frame a responsive pleading." *Id.*; Fed. R. Civ. P. 12(e). Moreover, pursuant to *Iqbal* and *Twombly*, to survive a motion to dismiss pursuant to Rule 8(a), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570) (emphasis added).

When the allegations are fraud, as the Court noted in *Simpkins v. SunTrust Mortg., Inc*, 2012 WL 3095570 at *3 (E.D. Tenn. 2012) (copy attached), "[e]ven stricter pleading requirements apply to plaintiffs' fraud claim. Rule 9(b) requires that 'in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.' F.R.C.P. 9(b). To satisfy this requirement, 'a plaintiff must, at a minimum, allege the time, place and content of the alleged misrepresentation upon which he relied; the fraudulent intent of the defendant; and the injury resulting from the fraud.'" [citation omitted].


## ARGUMENT

### PLAINTIFF'S STATUTORY CLAIMS FAIL TO STATE A BASIS ON WHICH ANY RELIEF CAN BE GRANTED.

Plaintiff purports to assert claims and causes of action against BANA arising out of alleged violations of the Fair Debt Collection Practices Act, 15. U.S.C. § 1692(a), *et seq.* ("FDCPA") (Count I), the Real Estate Settlement Practices Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") (Count IV), the Truth and Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA") (Count V) and the California version of the FDCPA, Cal. Civ. Code § 1788 (Count VI). It appears that the overriding claim is that Plaintiff states that he submitted QWRs under RESPA that went

6

unanswered and the subsequent foreclosure activity by BANA violated the FDCPA and the California version of the FDCPA; violated the bankruptcy stay and taken together these actions constitute violations of the FDCPA. He further alleges that he was not advised of the change in mortgage servicers in violation of TILA.

## PLAINTIFFS' RESPA CLAIM FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

While Plaintiffs[6] have alleged that BANA failed to respond to a QWR, the allegations in the complaint are insufficient to support any claim for relief.[7] The allegations relating to violations of RESPA fail because Plaintiffs have not alleged a factual basis for any pecuniary loss. Plaintiffs state that they have been damaged, but fail to state any factual basis for any such damage or correlate how any such damage was caused by the failure to provide a response to the QWR. More than simply stating there has been a failure to respond and we have been damaged is required. *See Ward v. Security Atlantic Mortg. Electronic Registration Systems, Inc*., 858 F.Supp.2d 561, 575 (E.D.N.C., 2012) where the court held:

> Furthermore, even assuming the notice was a valid QWR and that BAC failed to acknowledge receipt of Plaintiffs' QWR or failed to respond timely and adequately to Plaintiffs' questions therein, Plaintiffs nevertheless do not state a claim under 12 U.S.C. § 2605(e) as Plaintiffs fail to allege any pecuniary loss attributable to the RESPA violation. *See Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D.N.J.2006) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA.

---

[6] RESPA defines "consumer" as a natural person. Therefore, Meridian has no claim under RESPA.

[7] As noted the amended complaint supersedes the original complaint and renders the original complaint an nullity. As such, the amended complaint must be viewed as a stand-alone document. No exhibits were attached to the amended complaint. Accordingly, there is no basis for the Court to determine whether the so-called QWR covered servicing issues or whether it sought documents relating to the loan. *See Junod v. Dream House Mortg. Co*., No. CV 11–7035–ODW, 2012 U.S. Dist. LEXIS 3865, at *11–*12, 2012 WL 94355, at *3–*4 (C.D.Cal. Jan.5, 2012) (explaining copies of the promissory note and deed of trust and "a complete life of loan transactional history" are "not the type of information RESPA contemplates").

7/3156354.1

Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages."); *Ginn v. CitiMortgage, Inc. (In re Ginn)*, 465 B.R. 84, 95–96 (Bankr.D.S.C.2012) (noting "even if CitiMortgage did not comply with the RESPA provisions pertaining to QWRs [ ] [p]laintiffs failed to sufficiently allege that they suffered actual and/or statutory damages resulting from CitiMortgage's alleged RESPA violation"); *Wittenberg v. First Indep. Mortg. Co.*, No. 3:10–CV–58, 2011 U.S. Dist. LEXIS 39310, at *45, 2011 WL 1357483, at *16 (N.D.W.Va. Apr. 11, 2011) (holding "a plaintiff must allege that the loan servicer's failure to properly respond to a QWR caused pecuniary damage"); *Frazile v. EMC Mortg. Corp.*, 382 Fed.Appx. 833, 836 (11th Cir.2010) (holding "an allegation of damages is a necessary element of any claim under § 2605"). Accordingly, Plaintiffs' RESPA claim brought section 2605(e) is DISMISSED WITH PREJUDICE.

A review of the amended complaint reflects that Plaintiffs' claimed damages are asserted without any factual support. However, to state a claim, plaintiffs are required to set forth supporting facts regarding how they were damaged by the alleged failure to respond to the QWR. *See Boston v. Ocwen Loan Servicing, LLC*, 2013 WL 122151 at *5 (W.D. N.C. Jan 9, 2013) (copy attached), where the court noted:

> Even assuming the notice was a valid QWR and that Ocwen failed to acknowledge receipt of it or failed to respond timely and adequately to Plaintiff's questions therein, Plaintiff nevertheless does not state a claim under 12 U.S.C. § 2605(e) as Plaintiff fails to allege any pecuniary loss attributable to the purported RESPA violation. As noted above in the Court's analysis with reagrd (sic) to HSBC, "alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages." [citations omitted]

The court concluded by stating that "as Plaintiff's claim is without any supporting facts regarding how she was damaged by the alleged failure to respond to the QWR, it is insufficient to establish a violation of the RESPA." *Id.*

Here, the claims that BANA failed to provide answers or timely answers to the QWR fail to state a claim.

8

Plaintiffs also claim that BANA violated RESPA "by not providing Plaintiff with timely notice in writing of the purported assignment, sale, or transfer of the servicing of the Mortgage Loan…." Amended Compl. ¶89. First, there are no allegations that there was any transfer of servicing of the loan that would give rise to a duty to disclose other than the first, from Sierra to Countrywide. The complaint does not allege that Johannessen was not advised about the initial transfer. Presumably, this allegation relates with the MERS assignment of the deed of trust. However, the MERS assignment does not trigger a duty to disclose because the assignment of the deed of trust is not a sale, transfer or other assignment of the loan or servicing. RESPA requires a notice when servicing is transferred, not when a mortgage or deed of trust is assigned.

Second, transfers between affiliates do not require disclosure. *See* 24 CFR §3500.21(d) ("The following transfers are not considered an assignment, sale, or transfer of mortgage loan servicing for purposes of this requirement if there is no change in the payee, address to which payment must be delivered, account number, or amount of payment due: (A) Transfers between affiliates; (B) Transfers resulting from mergers or acquisitions of servicers or subservicers; and (C) Transfers between master servicers, where the subservicer remains the same.") There is no allegation that there were any transfers, much less a transfer that must be reported.

The claim of non-disclosure of transfers of servicing fails because there are no facts regarding when the alleged transfer of servicing took place, what entities were involved in the transfer of servicing, and what specific damages plaintiff suffered due to the lack of notice. *Teaupa v. U .S. Nat'l Bank, N.A*., 836 F.Supp.2d 1083, 1097–99 (D.Haw.2011); *Delino v. Platinum Community Bank*, 628 F.Supp.2d 1226, 1232 (S.D .Cal.2009). *See also Ford v. Saxon Mortg. Services, Inc*., 2012 WL 2862035 at *7 (N.D.Ala.,2012) (copy attached) where the court stated:

7/3156354.1

As to Saxon, the complaint contains no facts whatsoever regarding what entity serviced the loan at the beginning or who services it now. *** For this claim to succeed the plaintiff would have to allege facts showing that she had one entity who serviced that loan and then transferred the servicing of the loan to another without telling her. The complaint contains so such allegation. Further, the plaintiff has identified no resulting damages. Similarly, the plaintiff alleges no facts to support her claim under title 12 U.S.C. § 2605(c)(1), which states that "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer."

Finally, the claim relating to the force placed insurance fails to allege any factual basis for such a claim. While plaintiffs allege the bank placed forced place insurance, it fails to allege when, the circumstances surrounding the placement or that the bank failed to correct this when plaintiffs brought it to their attention or that Plaintiffs paid any amount for the insurance. Without more, the complaint fails to state a claim.

It is respectfully submitted that the RESPA claims fail to state a basis upon which any relief can be granted and those claims must be dismissed.

## PLAINTIFFS' TILA CLAIM FAILS TO STATE A CLAIM UPON WHICH ANY RELIEF CAN BE GRANTED.

Plaintiffs' TILA claim is essentially the same as the RESPA claim as to non-disclosure of the transfer of the loan. It, too, fails to state a claim.

Section 131(g), codified at 15 U.S.C. § 1641(g), "Liability of Assignees," requires that an entity notify the borrower in writing when it purchases or is assigned the beneficial interest in their loan on a property within thirty days of when the loan is transferred. *See* 15 U.S.C. § 1641(g)(1) ("not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt

10

shall notify the borrower in writing of such transfer," including identity and contact information for new creditor, date of transfer, and instructions for how to reach an agent with authority to act on behalf of new creditor).  However, this provision was added effective May 20, 2009 and does not apply retroactively.  *See Bradford v. HSBC Mortg. Corp.*, 829 F.Supp.2d 340, 353 (E.D.Va.2011)(stating that "[n]othing in TILA indicates that this provision should be applied retroactively.")  *See O'Dell v. Deutsche Bank Nat. Trust Co.*, 2013 WL 2389874, at *9 (E.D.Va., 2013) (addresses the effective date (May 20, 2009) (copy attached) of the requirement and the non retroactivity of the section.)  *O'Dell* also holds that an assignment of the deed of trust "is not a sale, transfer, or other assignment of the loan, and incapable of sustaining a cause of action for TILA violation.  *Id* at *14.

The complaint fails to allege that that any assignment of the debt occurred after the effective date of the statute or that an assignment of the debt occurred at all.  These allegations are insufficient to set forth any claim under TILA and must be dismissed.


### PLAINTIFF'S FDCPA CLAIM FAILS AS A MATTER OF LAW.

In Count I of the complaint, Plaintiffs assert that BANA violated the FDCPA.  In paragraph 29, Plaintiffs assert that Freddie Mac is the owner of the "Mortgage Loan."  They further assert that since 2007, no party has advised them that the "Mortgage Loan" was transferred to BANA.  Therefore, Plaintiffs conclude that BANA is not a real party in interest and has no standing to claim otherwise.  Plaintiffs assert that the defendants did not originate the Mortgage Loan and that it "was delinquent and in default prior to any Defendant purportedly obtained the Mortgage Loan."  Amended Compl. ¶¶ 18 and 29.  Most of the alleged violations relate to the claim that the codebtor stay was violated and those violations correspond into a FDCPA or California Act violation.

In order to assert a claim under the FDCPA, Plaintiffs must allege, inter alia, that BANA is a debt collector, not a creditor. In order to do this, plaintiffs attempt to assert that at the time BANA "obtained the Mortgage Loan" it was in default. However, this assertion as to obtaining the Mortgage Loan and it being in default is simply a conclusion unsupported by any factual statement. First, the definition of "Mortgage Loan" chosen by Plaintiffs includes the note and deed of trust. The note, a copy of which is attached as an exhibit reflects that it was endorsed by Sierra Pacific Mortgage Company to Countrywide Bank and by Countrywide Bank to Countrywide Home Loans and by Countrywide Home Loans in blank.

Throughout the complaint, Plaintiffs acknowledge that BANA is the loan servicer. Amended Compl. ¶6. In addition, to assert a claim under RESPA, Plaintiffs assert that BANA is the loan servicer, otherwise, there is no valid RESPA claim. Plaintiffs further acknowledge that BAC Parties "may merely possess the Mortgage Loan and/or one or more of its constituent parts, i.e., the Note and /or the Deed of trust. Amended Compl. ¶30.

While Plaintiffs assert, without any factual support, that "Plaintiff and Meridian were notified that the Mortgage Loan was delinquent and in default before any defendant obtained the Mortgage Loan," (Amended Compl ¶18), that conclusion is not only not supported by any factual support, but defies credibility based on the other allegations of the complaint and the note. Clearly, BANA and its predecessors were servicing the loan. Plaintiffs were making payments on the loan to Countrywide. Plaintiffs assert that Countrywide was aware of the transfer of the property from the Johannessens to Meridian in 2008. Plaintiffs allege that they requested information as to the loan modification from BANA, but were told that the loan was performing and BANA could not modify the loan unless it was non-performing. Plaintiffs alleged that in January 2012 they were told to stop making payments. An inference can be

12

drawn from this part of the complaint that until that time, the loan was performing and not in default. However, due to the lack of articulation as to when the loan went in default, there is a lack of plausibility as to these allegations.

BANA is not a "debt collector." It is a loan servicer. A reading of the complaint and an examination of the note, and a review of the various bankruptcy pleadings, reflects that BANA is a "creditor" or a "servicer," not a "debt collector." Plaintiff does not allege any facts to show that the note was endorsed to BANA, or its predecessors, **after** the loan was in default. Absent some factual based allegation that the note was assigned to BANA after it went into default, BANA is not a "debt collector" as that term is used in the FDCPA, but is rather a "creditor" collecting its own debt or a servicer.

Presumably Plaintiffs are attempting to assert that the assignment from MERS was the operative fact giving rise to an assignment of the "Mortgage Loan." However, that is not accurate. Under California law, as in Tennessee, assignment of the debt secured by a mortgage or deed of trust carries with it the security. *See* Calif. Civ.Code §2936 ("The assignment of the debt secured by a mortgage carries with it the security.")

A creditor under the FDCPA is "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4); *see Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003). The note was endorsed by Sierra Mortgage to Countrywide Bank, N.A. and to Countrywide Home Loans. BANA is successor by merger to Countrywide Home Loans. Accordingly, BANA is a creditor because the debt is owed to it.

To be subject to the FDCPA, BANA must be a "debt collector." A "debt collector" under the FDCPA is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). An entity whose principal purpose is the extending of credit, not the collection of debts, is not a debt collector subject to the FDCPA. *Lewis v. ACB Bus. Services, Inc.*, 135 F.3d 389, 411 (6th Cir. 1998). *See also Hennington v. Bank of America et.al.*, 2010 U.S. Dist. LEXIS 141497, at *22 (N.D. Ga. Dec. 21, 2010) (copy attached) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."). In addition, the Sixth Circuit has explicitly recognized that lenders and loan servicers are not "debt collectors" under the FDCPA, unless they were assigned the debt after it was already in default.

In this case, plaintiff identifies BANA as the servicer of the loan and that he requested information about the loan from BANA concerning the assignment from Sierra and other information that clearly shows that BANA is the loan servicer. The note with its endorsements and the proofs of claim reflect that BANA is the holder of the Note by virtue of the endorsements. As such, BANA cannot be a "debt collector" under the FDCPA unless it took the assignment after the loan was in default.

Plaintiffs do not allege when the note went into default. Clearly, as the maker of the note Plaintiff Johannessen and Meridian as the property owner, have within their knowledge when they defaulted on the note. Likewise, they know when the note was assigned to Countrywide and when they started making payments to Countrywide. Clearly, the broad general unsupported bare bones conclusory statement that there was a default when defendants acquired the "Mortgage Loan" fail to satisfy the pleading requirements of *Ashcroft* and *Iqbal*.

14

The FDCPA does not apply to this loan.[8]

## COUNT III FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Count III alleges that BANA violated the automatic codebtor stay under 11 U.S.C. §1301(a). While the codebtor stay provides temporary protection to one who may be jointly liable with the Chapter 13 debtor, the stay is designed only to protect the principal debtor, not the co-debtor. Any protection of the co-debtor is incidental. *In re Leonard*, 307 B.R. 611, 614 (Bankr. E.D. Tenn. 2004); citing *Southeastern Bank v. Brown*, 266. B.R. 900, 908 (S.D. Ga. 2001). Further, the court in *In re Morris*, 385 B.R. 823, 830, fn. 8 (E.D. Va. 2009), referenced that "[a]lthough the co-debtor stay and the debtor stay arise from separate provisions under the Code, the Court finds the case law governing the automatic stay under § 362 instructive as § 1301 was enacted, *not to protect co-debtors, but to prevent creditors from circumventing the § 362 automatic stay* by putting indirect pressure on the debtor through her co-debtors." Emphasis added; citing *In re Montes*, 166 B.R. 147, 149 (Bankr. D. Mo. 1994). *See Harris v. Margaretten & Co., Inc., (In re Harris)*, 203 B.R. 46, 51 n.2 (Bankr. E.D. Va. 1994), aff'd 100 F.3d 950, 1996 WL 659434 (4th Cir. Nov. 14, 1996) ("Section 1301 was intended primarily for the benefit of the principal debtor by relieving the debtor from pressures which creditors might exert on those codebtors close to the debtor."). The purpose of the codebtor stay is to protect the debtor, not the co-debtor. *In re Brooks,* 340 B.R. 648, 655 (Bankr.Me., 2006).

---

[8] Based on the allegations in the complaint, plaintiff is asserting violations of the California Fair Debt Collection Practices Act, but those violations are deemed to be violations of the FDCPA. *See* paragraphs 185-190. The California FDCPA mirrors the federal rule. *See, e.g.*, *LAL v. Am. Home Serv.*, 680 F. Supp. 2d 1218, 1224 (E.D. Cal. 2010) (granting motion to dismiss state FDCPA claim because state act "mirror[s] . . . the FDCPA" and thus does not treat loan servicer as debt collector); *Nool v. Homeq Serv.*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009) (same); *In re Cobb*, 2010 WL 4942545, at *5 (E.D. Cal. 2010)("[S]everal courts within this Circuit have also concluded that in mirroring provisions of the [FDCPA], a mortgage servicing company or assignee of the debt is not considered a 'debt collector' under the [California] FDCPA.") (collecting cases).

15

Since the stay is for the benefit of the debtor, this is the debtor's claim, and this claim should have been brought by the debtor or in the debtor's underlying bankruptcy case. If there is a violation of the codebtor stay, that claim must be brought in the bankruptcy case of the debtor since violations of the stay are deemed to be core proceedings. Jurisdiction over a claimed violation of the stay is pursuant to 28 U.S.C. § 157 and must be asserted in the bankruptcy case of the debtor, not in a separate action, brought by the codebtor.

Further, the confirmation order included that the debtor had no interest in the Cagney Court Property. All interests as to the debtor were surrendered per the confirmed plan and relief provided at that time. The intent of the co-debtor stay was to protect the debtor, and the debtor's bankruptcy plan evidences that she was not seeking any protection from the bankruptcy court. Johannessen now seeks to utilize the provisions of the bankruptcy code and allege a violation of the co-debtor stay. However, even Johannessen has asserted that he has no interest in the property, as all interest in the property was transferred to Meridian. A foreclosure proceeding as to the Cagney Court Property was not stayed as to Meridian, by virtue of the debtor's confirmed chapter 13 plan. Meridian was a non-party to that proceeding. The institution of foreclosure against Meridian, the property owner, is not an attempt to collect on the debt of the debtor or the codebtor.

Count III fails to state a basis upon which relief can be granted. The debtor had no interest in the Cagney Court Property. The co-debtor has no interest in the property. The institution of foreclosure against Meridian, the property owner, is not an attempt to collect on the debt of the debtor or the codebtor by putting pressure on the debtor through her codebtors. And, as noted, any claim is a core proceeding under the Bankruptcy Code and must be brought in the Chapter 13 proceeding.

16

**COUNT VII FAILS TO STATE A CLAIM FOR FRAUD OR MISREPRESENTATION**

The complaint fails to allege fraud with the degree of particularity required by Rule 9(b). There are no specific allegations of what was represented, what was false about what was represented, who represented what to whom and how any representations were relied upon by Plaintiffs. A review of paragraphs 121 through 126 fail to satisfy the pleading requirements to set forth a claim for fraud. *Simpkins v. SunTrust Mortg., Inc.* 2012 WL 3095570 (E.D. Tenn. 2012).

It is not for the court or party to decipher the complaint, but for the plaintiff to set forth a short plain statement as to what the claim is and how it is applicable. This complaint fails to allege the basic elements of fraud or misrepresentation other than in a formulaic recitation of the elements of a cause of action. Count VII should be dismissed.

**PLAINTIFFS' QUIET TITLE ACTION SHOULD BE DISMISSED**

In Count VIII plaintiffs incorporate all prior 126 paragraphs and seek to have title to the property divested from BANA and vested in the "rightful owner" presumably Meridian. The allegations are not factual based. Plaintiff Johannessen does not claim to be the owner of the property. He has no interest in the real estate. He has no standing to assert a claim for quiet title.

As stated in *Paczko v. Suntrust Mortgages, Inc.*, 2012 WL 4450896 at *3 (Tenn.Ct.App. 2012) (copy attached) "One may bring an action to quiet title in realty but to do so he or she must have an interest in the property at issue." In *Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn.Ct.App.1995) the court held: "Without an interest in the property [defendant] has no standing to raise any question concerning its true ownership." *See also Hall v. Fowler*, No. W2006–00385–COA–R3–CV, 2007 WL 4554651, at *5 (Tenn.Ct.App. Dec. 28, 2007) (copy attached) ("Standing is a judge-made doctrine which has no per se recognition in the

17

rules. It is used to refuse to determine the merits of a legal controversy irrespective of its correctness where the party advancing it is not properly situated to prosecute the action." [citation omitted] The doctrine rests upon the idea that '[a] court may and properly should refuse to entertain an action at the instance of one whose rights have not been invaded or infringed.'"[citation omitted]).

As to Meridian, it is the owner of the property, but the property is encumbered. While Meridian did not execute the note, the conveyance of the property to it is subject to the lien that secures the debt. Before Meridian can assert a claim, it has to establish that the debt secured by the property has been paid.

To the extent California law applies, this quiet title action is deficient. Under California law, Code Civ. Proc. §761.020, the complaint must be verified. This complaint is not verified. Likewise, since the complaint seems to assert that Feddie Mac owns the "Mortgage Loan" it should be a party. Code Civ.Proc., §762.060(b). Likewise, under California law a mortgagor cannot maintain an action to quiet title without satisfying the debt. *Mix v. Sodd*, 178 Cal.Rptr. 736, 738-39, 126 Cal.App.3d 386 (Cal.App., 1981)(copy attached). This is based on the equitable principal that he who seeks equity must do equity. Under these circumstances, no relief can be afforded plaintiffs as they have not paid or offered to pay the amounts due. Indeed, Meridian was in bankruptcy until the appeal was dismissed.

Finally, there are no allegations that the lien of the deed of trust is not a valid lien on the property. Title to the property is in Meridian, but it is subject to a valid first lien of a recorded deed of trust. Regardless of whether the codebtor stay was violated or whether the FDCPA was violated, title to the property is encumbered by a valid lien and until that lien is paid, there is no basis for awarding title to the property to Meridian.

7/3156354.1

Likewise, there is no slander of title. There is a valid lien on the property. A default occurred. Instituting a foreclosure is not a slander of title. Obtaining an assignment of the lien from MERS is not an action that constitutes a slander of title. Indeed, California cases have upheld the role MERS plays. *See Herrera v. Federal National Mortgage Association*, 205 Cal.App.4[th] 1495, 1497, 141 CalRptr.3d 326, 328 (Cal.App. 2012)("The courts in California have universally held that MERS, as nominee beneficiary, has the power to assign its interest under a deed of trust. Plaintiffs granted MERS such authority by signing the deed of trust.")

Based on the above, the claims for quiet title or slander of title must be dismissed.

## PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

Plaintiffs seek injunctive relief, but it is not clear what relief they are seeking. In paragraph 140 they state that "The Real Property … [is] innately unique and money damages will be inadequate to redress a deprivation of any interest in … the Real Property." However, they fail to allege the elements required to obtain injunctive relief. Simply stated, Plaintiff, Johannessen is in default on the note. The conveyance of the property to Meridian is subject to the lien securing the debt. Meridian is in default. While Plaintiffs assert that Meridian has no obligation on the loan, its interest in the property is subject to the prior perfected lien. There is simply no equity in favor of Plaintiffs that would justify enjoining BANA from foreclosing on the property or seeking to enforce its rights under a judicial foreclosure to enable it to seek a deficiency against Johannessen.

19

**PLAINTIFF'S CLAIM FOR AN ACCOUNTING IS BASED ON HIS ALLEGED QWR
UNDER RESPA; THIS LOAN IS NOT SUBJECT TO RESPA**

RESPA does not apply. There is no QWR properly before the Court. There is no substantive claim that RESPA applies to allow Meridian an accounting. There is no allegation that Meridian, the property owner, is a consumer under RESPA. By definition, it is not. Accordingly, plaintiffs' claim to an accounting based on RESPA fails to state a claim. BANA has filed proofs of claim in the bankruptcy proceeding of Meridian. Those proofs of claim have set forth the claim asserted by BANA. Nothing further should be required.

## CONCLUSION

For the reasons set forth herein, the complaint should be dismissed.

Respectfully submitted,

*/s/H. Frederick Humbracht*
H. Frederick Humbracht (No. 2993)
BRADLEY ARANT BOULT CUMMINGS LLP
1600 Division Street, Suite 700
Nashville, Tennessee 37203
Telephone: (615) 252-2371
Facsimile: (615) 252-6371
rhumbracht@babc.com

*Attorneys for Defendants*

20

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing is being is being served via the Court's ECF system on this the 24th day of June, 2013, on:

Scott D. Johannessen
3200 West End Avenue
Suite 500
Nashville, TN  37203

And, by regular mail on:

Quality Loan Service Corporation
Attn:  Bounlet Louvan
2141 Fifth Avenue
San Diego, CA 92101

*/s/H. Frederick Humbracht*
H. Frederick Humbracht

21