# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| SCOTT JOHANNESSEN;<br>MERIDIAN VENTURE PARTNERS LLC,<br>a limited liability company, | §<br>§<br>§<br>§ | |
| Plaintiffs, | § | Case No. 3:13-cv-00296 |
| v. | §<br>§ | Chief Judge William J. Haynes, Jr. |
| BAC HOME LOANS SERVICING, LP,<br>a limited partnership; BANK OF AMERICA,<br>N.A., a corporation; and QUALITY LOAN<br>SERVICE CORP., a corporation, | §<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

## PLAINTIFFS' RESPONSE TO MOTIONS TO DISMISS

Plaintiffs Scott Johannessen and Meridian Venture Partners LLC ("Meridian") hereby respectfully

respond to the pending *Motions to Dismiss* filed by Defendants Bank of America, N.A. ("BANA") and

Quality Loan Service Corporation ("Quality Loan"), as follows:[1]

## I

## INTRODUCTION

Defendants' narrative vis-à-vis the provenance for, ownership, transfer and/or assignment of, and

unbroken chain of title to the documents which they claim permit them to do what they are seeking to do

under color of law simply do not exist. Despite repeated requests by Plaintiffs that they do so, Defendants

remain unwilling to produce the documentation which they claim does exist and supports their collective

entitlement to proceed with debt collection and mortgage loan foreclosure activities against Plaintiffs.

---

[1]    For nearly three months now the parties hereto have been involved in settlement discussions, but Plaintiffs have
not heard back from any Defendant for two weeks. Realizing that Defendant's counsel may still be unavailable for
whatever reason and although not originally inclined to do so unless and until settlement discussions formally
conclude, Plaintiffs respond to Defendant's *Motions to Dismiss* now only out of an abundance of caution lest the
pending *Motions to Dismiss* be passed upon by the Court without a response on file.

Case 3:13-cv-00296   Document 46   Filed 09/23/13   Page 1 of 35 PageID #: 822

Defendants present legal and factual arguments and conclusions based on false premises. They incorrectly presume, in effect, "The title, ownership, transfer and assignment documentation supporting our debt collection and mortgage loan foreclosure activities and legal positions must exist or we would not be doing what we are doing." This circular reasoning represents a classic "begging the question" logical fallacy.

This is a civil action addressing, among other things, mortgage loan servicing abuses, including unlawful residential foreclosure practices, used in conjunction with the collection of consumer debts. This case concerns mortgage loan documents and real property subject to federal and California, not Tennessee, law. In their roles as the purported owners, principal's agents and/or assignees of the subject mortgage loan Defendants have engaged and continue to engage in improper debt collection activities in violation of various federal and California debt collection, foreclosure and bankruptcy statutes, laws, rules and regulations. The *Amended Complaint* itemizes by paragraphs and by specific statutory provisions Defendants' improper activities. If Defendants believe the allegations of wrongful conduct against them are too many in number it is simply because there are numerous instances of wrongful conduct with which Defendants can be held accountable under federal and California law.[2]

Defendants' narrative as to the mortgage loan's status and provenance is unsupportable and untenable. Defendants have engaged and continue to engage in improper debt collection activities against parties who do not owe the subject debt and who do not own the subject real property. No Defendant owns, has owned or has properly obtained or acquired the mortgage loan it is seeking to collect and upon which it bases its right to foreclose. The mortgage loan, consisting of a promissory note and deed of trust, is owned by the Federal Home Loan Mortgage Corporation ("Freddie Mac") and no Defendant has ever produced any evidence establishing any assignment or transfer to it by Freddie Mac that would legally

---

[2]   Quality Loan begins its *Motion to Dismiss*, the arguments of which a largely drawn from a similar *Motion to Dismiss* filed by BANA, with an attempt to distance its own debt collection efforts from those of BANA, its principal in the debt collection and mortgage loan foreclosure processes at issue in this case. The gist of Quality Loan's disclaimer is repeated and it echoes throughout its *Motion to Dismiss*. To be sure, in the opening line Quality Loan defensively asserts, "Plaintiffs filed this action asserting various claims and causes of action arising out of a mortgage loan transaction and *Bank of America's efforts* to foreclose upon the property." Of course, Quality Loan is reluctant to admit the obvious. That is, Quality Loan, the agent, is also a debt collector and was retained by BANA, its principal, to proceed with the wrongful debt collection and mortgage loan foreclosure activities on BANA's behalf. In the debt collection and mortgage loan foreclosure practices engaged in here Quality Loan and BANA are two peas in the same pod.

permit any Defendant to engage in their improper debt collection and mortgage loan foreclosure activities. Meridian is not an obligor, guarantor or signatory under the mortgage loan and never has been. Meridian does not owe any money to any Defendant under the promissory note and never has. Although he has legal and equitable interests in the subject real property, e.g., as a remainderman and trust beneficiary, Mr. Johannessen does not own the real property and has not owned it for five years. Meridian owns the real property.

In their *Motions to Dismiss* Defendants are arguing facts and law as they might at trial or in some other pretrial proceeding, but even then the facts relevant to this case as presented by Defendants are largely incomplete, taken out of context and often inaccurate. Defendants' attempts to improperly paraphrase or otherwise incorrectly state what Plaintiffs have or have not plead or the positions Plaintiffs do or do not take in their *Amended Complaint* belies the weaknesses of the defenses Defendants may raise, when they eventually do answer the *Amended Complaint*, to the various claims to which they should be required to substantively respond. Defendants also feign confusion as to their proper identities and roles vis-à-vis the subject mortgage loan, at times conveniently claiming they are mortgage loan servicers, thus exempt from applicable laws, e.g., the FDCPA, and then when convenient for argument's sake claiming they are *not* mortgage loan servicers and exempt from other applicable laws, e.g., RESPA.

Given Defendants' obfuscation and subterfuge, the following factual predicates, as presented by Plaintiffs in their *Amended Complaint*, are restated here to help clear up the muddied waters so this case can move forward and be decided not on clever wordsmithing and attorney art craft, but on its merits.[3]

---

[3] Defendants are again attempting to introduce "evidence" that is not appropriate for consideration in the context of their *Motions to Dismiss*. BANA sought to introduce this same documentation in support of its prior motion to dismiss. Accordingly, for purposes of judicial efficiency and economy, Plaintiffs incorporate herein in full Mr. Johannessen's prior response to BANA's submitted and controverted documentation. *See* DE 20 (***Response to Requests for Judicial Notice; Objections to Evidence and Motion to Strike***) and DE 25 (***Supplemental Response to Requests for Judicial Notice***).

Case 3:13-cv-00296   Document 46   Filed 09/23/13   Page 3 of 35 PageID #: 824

## II

## FACTUAL BACKGROUND

In June 2001 Plaintiff Scott Johannessen, a California resident, purchased certain residential real estate located at 15 Cagney Court in Sacramento, California (the "Real Property"). The Real Property is the former residence of Plaintiff and his wife, Lorrie Johannessen (collectively, the "Johannessens"). The Real Property, the first home owned by the Johannessens, was a good and secure investment in their family's future. The Real Property was not purchased for business or investment purposes or to make a profit. To the contrary, the Real Property was purchased for very personal reasons, e.g., as a home for the Johannessens and their children. *Amended Complaint* at ¶ 8. In December 2006 Mr. Johannessen transferred the Real Property by grant deed to himself and Mrs. Johannessen, as husband and wife and as community property with a right of survivorship. *Amended Complaint* at ¶ 9.

In December 2006 the Johannessens obtained a mortgage loan from Sierra Pacific Mortgage Company, Inc. ("Sierra Pacific"), a California corporation (the "Mortgage Loan"). The Mortgage Loan includes a promissory note (the "Note") and a deed of trust (the "Deed of Trust"). The Mortgage Loan, i.e., the Note and the Deed of Trust, identifies Sierra Pacific as the lender and the Johannessens as the borrower. By its terms, federal and California laws govern the Mortgage Loan. The Mortgage Loan was secured by the Johannessens not to purchase the Real Property or to make any money, but rather to take cash out of their former residence for various personal, family and household purposes, e.g., purchasing furniture and household items, children's clothes, family vacation, etc. In fact, the Real Property, rented to friends of the Johannessens, operated at a loss, did not make a profit and was not expected to make a profit. *Amended Complaint* at ¶ 10.

In January 2007 the Mortgage Loan was transferred to Freddie Mac.[4] Freddie Mac owns the

---

[4]     Freddie Mac is a Congressionally chartered corporation that purchases residential mortgages in the secondary market from S&Ls, banks, and mortgage bankers. Congress chartered Freddie Mac in 1970 with "a public mission to stabilize the nation's residential mortgage markets and expand opportunities for homeownership and affordable rental housing." Freddie Mac's "statutory mission is to provide liquidity, stability and affordability to the U.S. housing market … [and] participate in the secondary mortgage market by *purchasing mortgage loans* and mortgage-related securities for investment." *See* www.freddiemac.com/corporate/company_profile/faqs/, Freddie Mac's official government sponsored Internet website, which also states: "Freddie Mac does not make loans directly to homebuyers.

Mortgage Loan and this fact can be independently verified on Freddie Mac's official government website. *Amended Complaint* at ¶ 11.  A true and accurate copy of Freddie Mac's confirmation of ownership of the Mortgage Loan is attached hereto as **Exhibit A** and appears in the Court's records at DE 22-1, p. 1, of which Plaintiffs request judicial notice pursuant to Fed. R. Evid. 201.[5]

Meridian was formed in March 2008.  Meridian is a Tennessee limited liability company.  Mr. Johannessen, its original member, formed Meridian as a Family-Owned Non-Corporate Entity, i.e., a "FONCE," pursuant to Tenn. Code Ann. 67-4-2008(a)(11).  *Amended Complaint* at ¶ 12.

Meridian was formed for two primary reasons.  First and foremost, as a family estate planning tool to provide for Mr. Johannessen's wife and children in the event of his untimely passing, as he has no life insurance.  Second, as a vehicle to protect his family from unanticipated personal injury claims or other liability occasioned by the use of or trespass on the real estate, i.e., the Real Property, owned by Meridian. Mr. Johannessen easily managed the Real Property while living in Sacramento.  Mr. Johannessen's friend, who rented the Real Property with his wife, was a contractor and a very skilled "fix it" person.  Mr. Johannessen's involvement was minimal, visiting the Real Property infrequently during the duration of the rental.  But living in Tennessee 2,300 miles away created significant challenges, as Mr. Johannessen was no longer able to physically visit and/or attend to the Real Property.  Placing real estate into a separate legal entity has long been a logical, common, preferred and legitimate estate planning mechanism to provide

---

[Its] primary business is **to purchase loans** from lenders to replenish their supply of funds so that they can make more mortgage loans to other borrowers." *Id.*

[5]     In BANA's *Motion to Dismiss* it states, "the amended complaint supersedes the original complaint and renders the original complaint an [sic] nullity." From this statement BANA leaps to the erroneous conclusion that a superseded pleading, including all exhibits filed therewith, removes the Court's prerogative to take judicial notice of its own records as provided under Fed. R. Evid. 201.  BANA's assumption is not accurate. First, federal courts may take judicial notice of contracts or other key documents mentioned in the pleadings where there is no factual dispute about the documents' authenticity or enforceability. Second, as they qualify under the standard set forth under Rule 201, federal courts may take judicial notice of governmental websites. See, e.g., *Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of approval by the National Mediation Board published on the agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (Fifth Circuit taking judicial notice of Texas agency's website); see also *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of information on official government website pursuant to Rule 201); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.").

additional family protections from personal liability claims.  *Amended Complaint* at ¶ 13.

In July 2008 the Johannessens moved to Tennessee.  In August 2008 Mr. Johannessen established the Johannessen Family 2008 Irrevocable Trust (the "Trust").  The Trust is a spendthrift trust under Tennessee law.[6]  As with Meridian, the Trust is legitimate, well-planned and established in accordance with federal and state laws.[7]  Following the formation of the Trust, Mr. Johannessen freely, voluntarily and in accordance with applicable California and Tennessee laws transferred his full membership interest in Meridian to the Trust.  At that point and ever since the Trust has been the sole and only member of Meridian.  *Amended Complaint* at ¶ 14.

In November 2008 the Real Property was transferred to Meridian as a permitted gift, free of reassessment, pursuant to California's Proposition 13.[8]  The Assessor of Sacramento County, California

---

[6]    A spendthrift trust is defined as "[a] trust that prohibits the beneficiary's interest from being assigned and also prevents a creditor from attaching that interest; a trust by the terms of which a valid restraint is imposed on the voluntary or involuntary transfer of the beneficiary's interest." Black's Law Dictionary 1552 (8th ed. 2004); see Restatement (Second) of Trusts § 152(2) (1959); 2A Austin W. Scott, Jr., The Law of Trusts § 151 (4th ed. 2001).  A debtor's income from a trust and future remainder interests in the principal of a trust is protected by a valid spendthrift provision.  *Wachovia Bank, N.A. v. Levin*, 419 B.R. 297, 303 (E.D.N.C. 2009).

[7]    The Trust was duly established as a Tennessee Asset Protection Trust pursuant to the Tennessee Investment Services Act of 2007 (the "Act"). T.C.A. § 35-16-101, *et seq.*; *see* 2007 Tenn. Pub. Acts 144. The Trust was created to receive contributions from or on behalf of Plaintiff, the Grantor, during his lifetime.  Plaintiff created an Investment Services Trust, as defined in T.C.A. § 35-16-102(7) as part of the Tennessee Investment Services Act of 2007 (the "Act"), including any future amendments thereto, so as to obtain for him and his family the creditor protection provided under the Act. Consistent therewith, all contributions by the Johannessens to any trust created under the Trust during their lifetime will be "qualified dispositions" within the meaning of T.C.A. §35-16-102(11).

The Trust is an irrevocable trust with a spendthrift clause.  The spendthrift clause applies to the Grantor as well as any other beneficiary under the Trust.  Neither the principal of any trust created thereunder nor the income therefrom while in the hands of the Trustee is subject to assignment, alienation, surrender, pledge, attachment, execution, diminishment or diminution in value, or claims of creditors or any beneficiary or beneficiaries whomsoever through legal process, bankruptcy, operation of law, or otherwise. Any attempted sale, assignment, alienation, surrender, pledge, attachment, or diminishment or diminution in value of the principal or income held in any trust created thereunder will be null and void and will not be recognized under any circumstances by the Trustee.

[8]    Pursuant to Fed. R. Evid. 201 Plaintiffs respectfully request that this Court take judicial notice of **Exhibit 1** to the original Complaint, DE 1, ¶ 10.

Proposition 13 (officially named the People's Initiative to Limit Property Taxation) was an amendment of the Constitution of California enacted during 1978, by means of the initiative process. California voters approved it on June 6, 1978. It was declared constitutional by the United States Supreme Court in the case of *Nordlinger v. Hahn*, 505 U.S. 1 (1992). Proposition 13 is embodied in Article 13A of the Constitution of the State of California. The proposition decreased property taxes by assessing property values at their 1975 value and restricted annual increases of assessed value of real property to an inflation factor, not to exceed 2% per year. It also prohibited reassessment of a

approved the transfer of the Real Property as a permitted transfer to an entity involving a husband, a wife and their family trust, thus not subjecting the Real Property to property tax reassessment.[9] As beneficiaries under the Trust, Johannessen family members own beneficial interests in Meridian and the Real Property owned by Meridian, i.e., principal, income and remainder interests (the "Personal Property"). Meridian owns fee title to the Real Property. *Amended Complaint* at ¶ 15.

Plaintiffs were notified that the Mortgage Loan was delinquent and in default before any Defendant purportedly obtained the Mortgage Loan. *Amended Complaint* at ¶ 18. Repeatedly since May 2011 Plaintiffs have asked Defendants, in writing and by phone, to provide copies of, among other things, documents authenticating and establishing the ownership of, the provenance for and any transfers and/or assignments of the Mortgage Loan that affect the Real Property. Plaintiffs also have requested copies of documentation disclosing detailed financial information relating to the monthly servicing and maintenance charges for the Mortgage Loan, including fees charged to the Johannessens for property insurance, taxes, penalties and interest. Plaintiffs requested such information in order to ascertain, among other things, the chain of title for and ownership of the Mortgage Loan since the Mortgage Loan's December 2006 origination and the propriety of the amounts BANA charged, billed and carried on its financial books and records vis-à-vis the Mortgage Loan, e.g., expenses improperly charged to the Johannessens. Defendants promised to provide, but did not provide, the requested information. *Amended Complaint* at ¶¶ 20-22.

Defendants were asked to provide, by telephone and later by way of written correspondence and a Qualified Written Requests ("QWR") pursuant to the Real Estate Settlement Procedures Act, specific information relating to, among other things, the authentication and establishment of the ownership of, the provenance for and any transfers and/or assignments of the Mortgage Loan and related documents that affect the Real Property. Plaintiffs requested such information in order to ascertain, among other things, the chain of title for and ownership of the Mortgage Loan and its constituent parts since the Mortgage

---

new base year value except for (a) change in ownership or (b) completion of new construction. The transfer to Meridian in this case is exempt from reassessment under Proposition 13.

[9] Pursuant to Fed. R. Evid. 201 Plaintiffs respectfully request that this Court take judicial notice of **Exhibit 2** to the original Complaint, ¶ 10.

Loan's December 2006 origination with Sierra Pacific and January 2007 transfer to Freddie Mac. Defendants promised to provide, but did not provide, the requested information. Plaintiffs disputed the amount Defendants claim is due under the Mortgage Loan within 30 days after Defendants informed Plaintiffs of the amount purportedly due but Defendants still refused to timely respond to Plaintiffs' requests and provide the requested information and Defendants continued with their unauthorized collection efforts.[10] A true and accurate copy of the QWR is attached hereto as **Exhibit B** and appears in the Court's records at DE 1-1, pp. 206-217, of which Plaintiffs request judicial notice pursuant to Fed. R. Evid. 201.

In January 2012 Michele Sjolander, a Senior Vice President of BANA, provided sworn deposition testimony in a federal district court case in Mississippi (the "Sjolander Deposition") concerning residential home mortgage loan services provided by BANA, MERS and others and relating to and/or performed in conjunction with the collection of consumer debts, including residential mortgage loans (the "Mississippi District Court Case"). See **Exhibit 8** to original *Complaint* (the "Sjolander Deposition").

The mortgage loan that was in question in the Mississippi District Court Case, as with the Mortgage Loan in question in this action, includes the purported endorsements of Ms. Sjolander and Laurie Meder that have been fabricated by someone other than the named endorsers, i.e., "robosigning." (the "Robosigned Allonges").[11] Among other testimony calling into question the accuracy, efficacy and trustworthiness of BANA's business practices where commercial paper and other document "processing" and endorsements are concerned, when asked whether either she or Ms. Meder had ever signed an endorsement on a promissory note, i.e., a mortgage loan, Ms. Sjolander replied, "No." At the deposition, Ms. Sjolander not only revealed that she did not place the endorsement on the note, but in fact was not

---

[10]    Paragraphs 18 and 19 of Plaintiff's original Complaint were inadvertently deleted during the process of its revision. Plaintiffs' apologize to the Court and to the parties for the oversight. With the Court's permission an appropriate errata/amendment to the *Amended Complaint* will be filed to correct the omission.

[11]    Robosigning occurs when an individual with no personal knowledge executes documents without actually reviewing them on what amounts to an assembly line process. Moreover, some of the persons executing the documents did not have authority to do so and, in some instances like this case, were not the person whose name appeared on the signature line. In this case, robosigning apparently took place in secretive locked vaults by persons other than the person(s) whose name(s) appeared on the signature line(s).

allowed into the vault area where endorsing is supposedly done (at Recontrust, by Recontrust employees) without an escort. Ms. Sjolander also stated that she does not know the name of the person who supposedly did place her purported endorsement on the note. See Sjolander Deposition, page 78, line 8, through page 82, line 7, and page 8, line 21, through page 18, line 3. Ms. Sjolander's position and authority with BANA and Ms. Meder's lack of position and authority with BANA also are established. *See* Sjolander Deposition, page 79, lines 2-9. A true and accurate copy of the Sjolander Deposition is attached hereto as **Exhibit C** and appears in the Court's records at DE 1-1, pp. 80-120, of which Plaintiffs request judicial notice.

In March 2012 Mrs. Johannessen filed for Chapter 13 bankruptcy court protection in the United States Bankruptcy Court for the Middle District of Tennessee (the "Chapter 13 Case"). Plaintiff is a co-debtor in the Chapter 13 Case. The bankruptcy case was not filed to avoid any foreclosure action. The bankruptcy case was filed to obtain some "breathing room" so Mrs. Johannessen could pay all her debts, not just the Mortgage Loan, over time. Along with several others who claimed an entitlement to payment BANA also was listed in Mrs. Johannessen's bankruptcy schedules, even though BANA never timely provided any substantiation for the Mortgage Loan or any response to Plaintiffs' myriad requests for information. BANA never filed a proof of claim or an objection in the Chapter 13 Case. The petition in the Chapter 13 Case was filed on March 9, 2012 (the "Stay Date"). *Amended Complaint* at ¶ 24.

The automatic Co-Debtor Stay imposed pursuant to the Bankruptcy Code, which prohibits collection efforts against Mr. Johannessen as a result of the Chapter 13 Case, was in effect without interruption from the date the Chapter 13 Case was commenced, i.e., on March 9, 2012, through the date the Co-Debtor Stay was lifted, i.e., on May 29, 2013. A true and accurate copy of the bankruptcy court's May 29, 2013, *Order Regarding Relief From Codebtor Stay* is attached hereto as **Exhibit D** and appears in the Bankruptcy Court's records at DE 101, p. 1, of which Plaintiffs request judicial notice pursuant to Fed. R. Evid. 201. The bankruptcy court's *Order Regarding Relief From Codebtor Stay* states:

> "This order should not be construed as including any ruling on the validity or enforceability of any promissory note or lien at issue, the effect of any transfer of collateral that has occurred, the value of any collateral securing the underlying debt, the impact of any foreclosure by BANA or the surrender of any such collateral to BANA, the amount of any deficiency

that may arise in connection with the debt, or any other matter in dispute between the parties. *In short, the stay is lifted to allow BANA and the codebtor to litigate any or all of the various issues that have been raised.*" (Emphasis added.)

In July 2012 Defendants sought to collect the Mortgage Loan from Mr. Johannessen and foreclose, by nonjudicial trustee's sale, on the Real Property owned by Meridian in violation of, among other things, the Real Estate Settlement Procedures Act, federal and state Fair Debt Collection Practices Acts, and the Co-Debtor Stay statutorily imposed for the benefit of Mr. Johannessen. When confronted with this information and after being provided proof of funds to satisfy any deficiency under the Mortgage Loan Defendants agreed to postpone the foreclosure sale to the following month. Following the postponement of the first foreclosure sale date Defendants failed and refused to return Plaintiffs' telephone calls or respond to their written communications regarding the Mortgage Loan. Among other things, Defendants' collection efforts and other actions were the cause of the loss of the tenants who had occupied the Real Property continuously since prior to 2008. *Amended Complaint* at ¶ 25.

In August 2012 Defendants again sought to collect the Mortgage Loan from Mr. Johannessen and foreclose on the Real Property by use of a trustee's sale in violation of, among other things, the Real Estate Settlement Procedures Act, federal and state Fair Debt Collection Practices Acts, and the Co-Debtor Stay. Meridian's Chapter 11 bankruptcy petition was filed before the scheduled sale date and the trustee's sale was adjourned, cancelled or postponed. The Chapter 11 petition was filed, in part, to protect Meridian from Defendants' unlawful debt collection practices and repeated violations of federal and state statutes and laws, including the Real Estate Settlement Procedures Act, federal and state Fair Debt Collection Practices Acts, and the Co-Debtor Stay. *Amended Complaint* at ¶ 27.

### III

### STANDARD OF REVIEW

#### A.    Standard of Review.

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex*

rel. Rippy v. Hattaway, 270 F.3d 416, 419 (6th Cir. 2001) (citing Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993)). The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), and he or she must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

Thus, under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. See Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008); Miller v. Curie, 50 F.3d 373, 377 (6th Cir. 1995) (citing Mertik v. Blalock, 983 F.2d 1353, 1356 (6th Cir. 1993)); Lambert v. Hartman, 517 F.3d 433, 439 (6th Cir. 2008); NicSand, Inc. v. 3M Co., 507 F.3d 442, 449 (6th Cir. 2007) (a complaint viewed "through the prism of Rule 12(b)(6)" requires a court "to accept all of its allegations and all reasonable inferences from them as true.")

"[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 228–29 (6th Cir. 1997) (quoting Columbia Nat'l Res., Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995)). To survive a motion to dismiss for failure to state a claim, a complaint must allege sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Under these principles, a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely." Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). And when ruling on a motion to dismiss a court may not consider evidence outside of the pleadings. Rondigo, L.L.C. v. Twp of Richmond, 641 F.3d 673, 680 (6th Cir. 2011) (citing Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104 (6th Cir. 2010)). However, the court may consider documents that are public records without

converting the motion to dismiss into a motion for summary judgment.  *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003).

**B.    Argument Of Counsel Is Not Evidence.**

Attorneys are not under oath when they present argument.  Rule 43 of the Federal Rules of Civil Procedure requires the testimony of witnesses to be taken under oath in open court.  Attorneys may present arguments or statements of fact outside of their personal knowledge, i.e., which is not evidence, but Rule 602 of the Federal Rule of Evidence requires that the testimony of a witness rest upon a foundation of "personal knowledge of the matter."

Also, documents submitted in support of a motion or offered in court without testimony are simply a written form of argument.  Documents are not admitted as evidence simply by filing them with a pleading.  *In re Holly's, Inc*., 190 B.R. 297, 301 (Bankr. W.D. Mich. 1995) (documents attached to a brief were not properly admitted into evidence and could not be considered by the court); see *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 796-97 (1st Cir. 1991) (district court improperly relied upon document attached to a motion in post-trial judgment when document was not admitted at trial).

Here, in this case, Defendants' attempts to repackage and incorrectly frame the underlying facts and then couch them in their attorneys' arguments to suit their purposes is misleading and should be disregarded.  There will be a time when what Defendants believe to be the evidence can be introduced, argued and possibly admitted, but now is not that time.

IV

**ARGUMENT**

**PLAINTIFFS CLAIMS FOR RELIEF ARE ADEQUATELY PLEAD
AND DEFENDANTS' MOTIONS TO DISMISS SHOULD BE DENIED**

BANA's *Motion to Dismiss* presumptively states,

> "It appears that the overriding claim is that Plaintiff states that he submitted QWRs under RESPA that went unanswered and the subsequent foreclosure activity by BANA violated the FDCPA and the California version of the FDCPA; violated the bankruptcy stay and taken together these actions constitute violations of the FDCPA. He further alleges that he was not advised of the change in mortgage servicers in

violation of TILA."

This is not Plaintiffs' "overriding claim." Not even close.

**A.** **The Complaint States A Claim Under The Fair Debt Collection Practices Act.**[12]

The Fair Debt Collection Practices Act (the "FDCPA" or the "Act") provides that "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

To present a claim under the FDCPA, the claimant must show that the monetary obligation in dispute is a "debt" under the terms of the Act and that the entity collecting the debt is a "debt collector." *Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 13-14 (D. Mass. 2004); *Dean v. Gillette*, No. 04-2100-JWL, 2005 WL 957043, at *3 n.3 (D. Kan. Apr. 25, 2005).

**1.** **The Mortgage Loan Is A Consumer Debt.** Although BANA' original motion to dismiss challenged Mr. Johannessen's assertion that the Mortgage Loan is a consumer debt, it appears that no Defendant is making that challenge now. Notwithstanding, out of an abundance of caution Plaintiffs reassert their position here.

In January 2007 the Mortgage Loan, i.e., the Note and Deed of Trust, was transferred to Freddie Mac. Freddie Mac owns the Mortgage Loan and this fact can be independently verified on Freddie Mac's official government website. *Amended Complaint* at ¶ 11; *see* https://ww3.freddiemac.com/corporate/. A "mortgage loan" means "any loan primarily for personal, family or household use that is secured by a mortgage, deed of trust, or other equivalent consensual security interest on a dwelling which contains 1 to 4 residential units." *See* http://www.dbo.ca.gov/Licensees/Mortgage_Loan_Originators/About.asp.

Under the FDCPA "[t]he term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the

---

[12] Count I of the *Amended Complaint* is brought by both Plaintiffs against both Defendants.

subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

The Real Property, the first home owned by the Johannessens, was an investment in their family's future. The Real Property was not purchased for business or investment purposes or to make a profit. To the contrary, the Real Property was purchased for very personal reasons, e.g., as a home for the Johannessens and their children. *Amended Complaint* at ¶ 8. Additionally, the Mortgage Loan was secured by the Johannessens not to purchase the Real Property or to make any money, but rather to take cash out of their former residence for various personal, family and household purposes, e.g., purchasing furniture and household items, children's clothes, family vacation, etc. The Mortgage Loan documentation bears this out. In fact, the Real Property, rented to friends of the Johannessens, operated at a loss, did not make a profit and was not expected to make a profit. *Amended Complaint* at ¶ 10.

Again, to the extent there remains any ambiguity, the Mortgage Loan is clearly a consumer debt and is recognized as such by Freddie Mac, the owner of the Mortgage Loan since Sierra Pacific transferred it to Freddie Mac in January 2007.

    **2.**    **Defendants Are Debt Collectors Under The FDCPA.** The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . ." 15 U.S.C. § 1692a(6).

Defendants argue that they cannot be held liable for any claim under the FDCPA because they are not "debt collectors" under the Act. BANA relies on a specific exemption within the statute: "The term ['debt collector'] does not include ... any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity *... concerns a debt which was not in default at the time it was obtained by such person."* 15 U.S.C. § 1692a(6)(F) (emphasis added).

The efficacy of Defendant's argument that they are not debt collectors under the FDCPA assumes (1) they properly obtained either the ownership of or the servicing rights to the Mortgage Loan and (2) the Mortgage Loan was not in default until after they purportedly obtained it. Both assumptions are factually inaccurate, contrary to the allegations in Plaintiffs' *Amended Complaint*, and contrary to the stated position of the United States government's sanctioned purchaser of mortgage loans, Freddie Mac.[13]

First, BANA does accurately quote black letter law, which states that a creditor under the FDCPA is "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4); *see Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003). However, BANA is not one "who offers or extends credit creating a debt" in this case nor one "to whom a debt is owed" in this case. In an effort to explain the obvious incongruity and to seek to support for its own legitimacy as a creditor BANA makes the inapposite and conclusory statements, to wit: "The [N]ote was endorsed by Sierra Mortgage to Countrywide Bank, N.A. and to Countrywide Home Loan. BANA is successor by merger to Countrywide Home Loans. Accordingly, BANA is a creditor because the debt is owed to it."

BANA's claim to creditor status is begging the question. BANA does nothing more than present a circular argument in which the conclusion, i.e., that it is a legitimate creditor exempted from the applications of the FDCPA, is included in the premise, i.e., that the Mortgage Loan is in fact owed to BANA by Plaintiffs and that since Sierra Pacific transferred the Mortgage Loan to Freddie Mac in January 2007 Sierra Pacific owned the Note it purportedly endorsed over to Countrywide Home Loans, which in turn purportedly transferred the Mortgage Loan to BANA. The very premise of BANA's position is faulty and the available evidence does not support it.

Of course, BANA says it has standing to engage in debt collection and mortgage foreclosure activities vis-à-vis the Mortgage Loan, but BANA saying it has standing to do so does not mean it has standing to do so. *Amended Complaint* ¶¶ 17, 21, 22. BANA cannot and has not shown that it validly holds both the mortgage and the underlying note in order to prove standing before the Court to defend

---

[13]   Freddie Macs official website states, "We participate in the secondary mortgage market by purchasing mortgage loans."

Plaintiffs' claims, therefore Defendants' debt collection and mortgage foreclosure activities are void *ab initio*. *Castro v Executive Trustee Services, LLC*, (D. Ariz. 2009 February 23, 2009, CV-08-2156-PHX-LOA) 2009 US Dist. Lexus 14134, and *Weingartner v. Chase Home Finance, LLC*, (D. Nev. 2010) 702 F.Supp.2nd 1276, 1282-1283.

The case of *LVNV Funding, LLC v. Mastaw* No. M2011-00990-COA-R3-CV, 2012 WL 1534785 (Tenn. Ct. App. April 30, 2012) (**Exhibit E** attached hereto) is illustrative of the evidentiary shortfalls in BANA's position that either Plaintiff owes the Mortgage Loan to BANA:

> In an action to collect a debt, the plaintiff creditor bears the burden of proving the existence of the debt and that the debtor is indebted to the creditor in a certain amount. *Bellsouth Adver. & Publ. Corp. v. Wilson*, No. M2006-00930-COA-R3-CV, 2007 WL 2200170, at *5; 2007 Tenn. App. LEXIS 496, at *12 (Tenn. Ct. App. July 30, 2007). In this case, because LVNV is not the original creditor as to Mastaw's Sears Gold MasterCard, LVNV must also prove by a preponderance of the evidence that it is the owner of Mastaw's debt. *See Cach, LLC v. Askew*, 358 S.W.3d 58, 62 (Mo. 2012) (citing *Midwestern Health Mgmt., Inc. v. Walker*, 208 S.W.3d 295, 298 (Mo. App. 2006)) (requiring "every link in the chain between the party to which the debt was originally owed and the party trying to collect the debt must be proven by competent evidence in order to demonstrate standing.") *See also Cuda & Assoc., LLC v. Lumpkin*, No. NNHCV9095031901, 2011 WL 6413674, at *1, 2; 2011 Conn. Super. LEXIS 3025, at *2, 6-7 (Conn. Super. Ct. Nov. 29, 2011) ("the plaintiff must demonstrate . . . that it is the valid assignee of an existing debt" and that the record was *made* in the regular course of business). Therefore, we look at whether LVNV met its burden of proving that Mastaw is in fact indebted to LVNV, and the amount of such debt.

Again, and not at all intending to beat the proverbial dead horse, no Defendant owns, has owned or has properly obtained or acquired the Mortgage Loan it is seeking to collect and upon which it bases its right to foreclose. Again, Freddie Mac owns the Mortgage Loan, this fact is irrefutable, and no Defendant or any other party has ever produced any evidence establishing any assignment or transfer of the Mortgage Loan to it *by Freddie Mac*. Indeed, in this regard no Defendant has heretofore refuted Plaintiffs' position. Again, Meridian is not an obligor, guarantor or signatory under the mortgage loan and never has been. Again, Meridian does not owe any money to any Defendant under the promissory note and never has. Again, Mr. Johannessen does not own the subject real property and has not owned it for five years. Meridian owns the real property.[14]

---

[14] The United States Bankruptcy Court for the Eastern District of California (the district in which the Real Property in this case is located) issued a ruling dated May 20, 2010, in the matter of *In re Walker*, Case No. 10-21656-E-11,

**Second**, the Sixth Circuit recently held that mortgage foreclosure actions, like those engaged in by BANA and Quality Loan, are "debt collection" under the FDCPA. *Glazer v. Chase Home Finance LLC*, No. 10-3416, 2013 WL 141699 (6th Cir. Jan. 14, 2013). In *Glazer*, the Sixth Circuit also held that lawyers who meet the general definition of debt collector under the FDCPA must comply with its provisions when engaged in mortgage foreclosure activities. And a lawyer whose principal business purpose is mortgage foreclosure or who "regularly" performs this function, like Quality Loan, meets this definition.

In Glazer, a property owner sued its mortgage servicer and the law firm it hired to foreclose on property he had inherited, alleging violations of the FDCPA and Ohio law. The complaint alleged that the servicer, its employees, and its law firm violated the FDCPA by falsely stating that the servicer owned the note and mortgage, improperly scheduling the foreclosure sale, and refusing to verify the debt upon request. The trial court granted summary judgment for defendants on the federal claims, reasoning that a mortgage foreclosure is the enforcement of a security interest, not a debt collection, and as such is not subject to the FDCPA.

On appeal, the Sixth Circuit reversed the district court's ruling that a law firm was not "a debt collector." Relying primarily on decisions of its sister circuits in *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373 (4th Cir. 2005) and *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227 (3d Cir. 2005), the court concluded that "every mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt," and, therefore, every mortgage foreclosure is a debt collection subject to the FDCPA. The court determined that was equally so even when the foreclosure was "not seeking a money judgment on the unpaid debt."

---

stating that "Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law." This conclusion was based upon California law, the law that applies in this case, and it is the same UCC and real estate law as most other states have adopted.

The *In re Walker* court states that the note and the mortgage are inseparable, and that an assignment of the note carries the mortgage with it, "while an assignment of the latter [the mortgage] alone is a nullity" (most foreclosing companies claim ownership of the mortgage only, not the note making the mortgage a nullity). Meaning; if a bank claims to own the mortgage, which BANA does not, but does not also own the note, which BANA does not, it cannot foreclose. This concept is from ancient English Common Law codified by most states as the UCC, for notes (a note is personal property), and also from real estate law and practice for the mortgage ( a mortgage is not personal property, it is real property). Of course, in the case before this Court Freddie Mac owns the Mortgage Loan. Not BANA. Not MERS. Not Quality Loan.

In reaching its decision, the Sixth Circuit rejected the view of the majority of district courts that mortgage foreclosures generally are not debt collection under the FDCPA because they are enforcements of a security instrument, not attempts to collect money. In the Sixth Circuit any activity whose purpose is to obtain payment of a debt "is properly considered debt collection" and "*every* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt." The *Glazer* court clearly and unequivocally held that "mortgage foreclosure is debt collection under the [FDCPA]."[15]

Third, no rights under the Mortgage Loan were ever properly obtained, through assignment of ownership, servicing rights or otherwise, to any Defendant. See above. The allegations of the *Amended Complaint* clearly state that BANA does not own the Mortgage Loan, which includes the Note and the Deed of Trust. In January 2007 the Mortgage Loan was transferred to Freddie Mac. Freddie Mac owns the Mortgage Loan. *Amended Complaint* at ¶ 11. Material issues of fact exist as to which entity is the legitimate owner/holder of the Mortgage Loan documents executed by the Johannessens. *Amended Complaint* at ¶¶ 17, 21, 22. Plaintiffs have repeatedly requested evidence establishing Defendants right to engage in any related collection activities but no such documentation has been provided. *Amended Complaint* at ¶ 20. As the case law explains, under the FDCPA a servicer of a loan "obtains" the loan for purposes of the exception only when it is properly assigned by the owner of the loan for servicing. *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996). No assignment of any rights under the Mortgage Loan exists. Again, Freddie Mac still owns the Mortgage Loan and each of its constituent parts.

Fourth, even assuming Defendants were properly assigned the right to foreclose on the Real Property and engage in collection activities related thereto as a "servicing company," which they were not,

---

[15] Six categories of people/entities are specifically excluded from the definition of "debt collector" under the FDCPA, but enforcers of security interests do not appear on that list. The Consumer Financial Protection Bureau (the "Bureau") in *Birster v. American Home Mortgage Servicing, Inc.* (11th Cir. 2012) 481 Fed. Appx. 579, which is an appeal from *Birster v. American Home Mortg. Servicing, Inc.* (S.D.Fla. 2011) 796 F.Supp.2d 1376 (*Birster*), filed an amicus brief wherein the Bureau took an official position that trustees must comply with the entire FDCPA, and not merely title 15 of the United States Code section 1692f(6), in connection with a nonjudicial trustee sale. The Bureau stated that an entity satisfying both definitions of "debt collector" remains a "debt collector" subject to the entire FDCPA even if it is enforcing a security interest in a particular case. See, e.g., *Ford Motor Credit Co. v. Milhollin* (1980) 444 U.S. 555, 566 (the "general proposition" is "that considerable respect is due the interpretation given [a] statute by the officers or agency charged with its administration").

a servicing company is still subject to the FDCPA if, as here, the loan was in default at the time the servicing company acquired the loan account. *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 173-74 (3d Cir. 2007). Thus, mortgage servicer companies and others who service outstanding debts for others are not debt collectors *only* "*so long as the debts were not in default when taken for servicing.*" *Mansour v. Cal-Western Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009) (emphasis added); *Bridge v. Ocwen Fed. Bank. FSB.* 681 F.3d 355, 360 n.4 (6th Cir. 2012) (although there is no statutory definition of "loan servicer" under the Act, a loan servicer will become a debt collector under § 1692a(6)(F)(iii) *only "if the debt was in default or treated as such when it was acquired")* (emphasis added).

In this case, not only was the Mortgage Loan or the servicing rights thereunder never transferred to any Defendant but the Mortgage Loan was in fact delinquent and in default *before* any Defendant purportedly obtained the Mortgage Loan or the concomitant right to foreclose and/or engage in any other collection activity under the FDCPA. *Amended Complaint* at ¶ 18.[16] Defendants are feigning ignorance as to this issue, claiming they do not know when the Mortgage Loan went into default and, presumably, whether it ever did. Surely, the documents and other information Defendants possess and have refused to provide Plaintiffs (BANA for over two years now) will bear this out and support Plaintiffs claim as to when they were so informed by BANA representatives prior to May 2011.[17]

---

[16]   *See Edmond v. Am. Educ. Servs.,* 2010 WL 4269129, at *5 (D.D.C. Oct. 28, 2010) (granting motion to dismiss on plaintiff's FDCPA claims only where there is an absence of an allegation that plaintiff's loan was in default when the defendant acquired it (citing *Brumberger v. Sallie Mae Servicing Corp.,* 84 Fed.Appx. 458, 459 (5th Cir. 2004) (FDCPA claim against loan servicer can be dismissed only absent an allegation that the plaintiff "was in default at the time Sallie Mae began servicing his loans")); *Ramirez-Alvarez v. Aurora Loan Servs., LLC,* 2010 WL 2934473, at *5 (E.D.Va. July 21, 2010) (mortgage loan servicer was not debt collector for purposes of FDCPA because it "received the debt in question while it was not in default"); *Mondonedo v. Sallie Mae, Inc.,* 2009 WL 801784, at *5 (D.Kan. Mar. 25, 2009) (loan servicer must obtain the loans originated by a bank for servicing prior to default to be exempt from liability under the FDCPA); *Taggart v. Wells Fargo Home Mortg., Inc.,* 2010 WL 3769091, at *11 (E.D.Pa. Sept.27, 2010) (loan servicers are debt collectors under the FDCPA where the debt being serviced was in default at the time the servicer obtained it).

[17]   BANA attacks Plaintiffs' credibility and the efficacy of their allegations by stating, "Clearly, as the maker of the note Plaintiff Johannessen and Meridian as the property owner, have within their knowledge when they defaulted on the note. Likewise, they know when the note was assigned to Countrywide and when they started making payments to Countrywide. Clearly, the broad general unsupported bare bones conclusory statement that there was a default when defendants acquired the "Mortgage Loan" fail to satisfy the pleading requirements …" By claiming Plaintiffs have access to internal information which BANA has heretofore refused to provide, to which original documentation and information only Defendants would be privy, and with which BANA has been playing "hide the ball" for years now is preposterous on its face.

Fifth, Defendants admit they are debt collectors, admit they are required by law to inform their customers that their communications concerning the Mortgage Loan are "from a debt collector," and BANA admits that it is still "in the process of obtaining the documentation and information necessary to address [Plaintiffs'] questions" which Plaintiffs have been requesting since May 2011 and which have not yet been produced. As an example of one such admission, a true and accurate copy of BANA's March 26, 2013, correspondence is attached hereto as **Exhibit F**.

The FDCPA applies to the Mortgage Loan. Although they have yet to provide evidence as to their proper standing to engage in such collection activities, Defendants are nonetheless "debt collectors" under the FDCPA and never properly obtained the debt they now claim to service. Defendants' request to dismiss this count in Plaintiffs' *Amended Complaint* should be denied.

**B.** **The Complaint States Claims Under The California Foreclosure Statutes And The Rosenthal Fair Debt Collection Practices Act.**[18]

Defendants do not substantively address Plaintiffs' claims for violations of the California Foreclosure Statutes (Cal. Civ. Code §§ 2920-2944.7) or the Rosenthal Fair Debt Collection Practices Act (Cal. Civ. Code § 1788, *et seq*.). In fact, Defendants summarily bypass and only give lip service to Plaintiffs' *Amended Complaint* in this regard. These California statutory protections afforded Plaintiffs also are adequately plead as provided under the applicable legal standards.[19]

The California Foreclosure Statutes and the Rosenthal Fair Debt Collection Practices Act apply to the Mortgage Loan as well as the foreclosure and unlawful collection activities engaged in by Defendants. Defendants' improper activities are itemized in the *Amended Complaint* under separate and distinct paragraphs. Although they may be loath to admit it, Defendants know what they have done wrong and why. Defendants' requests to dismiss these counts in Plaintiffs' *Amended Complaint* should be denied.

---

[18]   Count II and Count VI of the *Amended Complaint* are brought by both Plaintiffs against both Defendants.

[19]   The purposes for the nonjudicial foreclosure statutes are the following: "(1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." *California Golf, L.L.C. v. Cooper* (2008) 163 Cal.App.4th 1053, 1070.

C.     **The Complaint States A Claim For Violations Of The Co-Debtor Stay.** [20]

Defendants do not address their repeated violations of the Co-Debtor Stay save and except with attorney argument.  Defendants also are taking the position that their collection activities on the Mortgage Loan and their foreclosure activities vis-à-vis the Real Property are two separate and distinct things, thus not giving rise to a violation of the Co-Debtor Stay.  To wit, BANA states:

> "The institution of foreclosure against Meridian, the property owner, is not an attempt to collect on the debt of the debtor or the codebtor by putting pressure on the debtor through her codebetors. …"

BANA states that its debt collection and mortgage foreclosure activities are "not an attempt to collect on the debt of the debtor or the codebtor"?  Such statements by an admitted debt collector defy logic.  BANA is attempting to split a hair that cannot be split and runs counter to the bankruptcy court's order not lifting the Co-Debtor Stay until just over three months ago and acknowledging Plaintiffs right to pursue claims against Defendants in this Court.   The relevant language of **Exhibit D**, the bankruptcy court's order addressing this particular issue, bears repeating here:

> "This order should not be construed as including any ruling on the validity or enforceability of any promissory note or lien at issue, the effect of any transfer of collateral that has occurred, the value of any collateral securing the underlying debt, the impact of any foreclosure by BANA or the surrender of any such collateral to BANA, the amount of any deficiency that may arise in connection with the debt, or any other matter in dispute between the parties. *In short, the stay is lifted to allow BANA and the codebtor to litigate any or all of the various issues that have been raised*."

The Sixth Circuit likewise does not split the Mortgage Loan hair BANA is attempting to split between its related debt collection and foreclosure activities, the two being inseparable. "[M]ortgage foreclosure is debt collection."  *Glazer v. Chase Home Finance LLC*, No. 10-3416, 2013 WL 141699 (6th Cir. Jan. 14, 2013).

11 U.S.C. § 1301(a) is one of two fundamental debtor protections provided by the bankruptcy laws.  S.Rep. No. 989, 95th Cong., 2d Sess. 54 (1978); H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977).

---

[20]     Count III of the *Amended Complaint* is brought by both Plaintiffs against both Defendants.

11 U.S.C. §§ 362(a) and 1301(a) create broad automatic stays protecting both the debtor and the co-debtor, not just the debtor. The automatic stays are "effective upon the date of the filing of the petition ... and formal service of process will not be required." 2 Collier on Bankruptcy p 362.03 (15th ed. 1988). The Co-Debtor Stay extends to virtually all formal and informal actions against the co-debtor. It is intended to "stop all collection efforts, all harassment, and all foreclosure actions." S.Rep. No. 989, 95th Cong., 2d Sess. 54, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5840. Any collection action taken by a creditor in violation of the Co-Debtor Stay is legally invalid, void and unenforceable.

Defendants' actions on or after the Stay Date as set forth hereinabove are unlawful and are material violations of the Co-Debtor Stay. Pursuant to 11 U.S.C. § 362(k)(1) "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The Court can sanction a debt collector for violating its automatic stay orders if the debt collection activities are "willful." The activities are willful if (1) the automatic stay order was in force and was actually violated; (2) the debt collector knew of the bankruptcy case and either ignored the Court's order or failed to immediately correct its action after learning of the bankruptcy case; and (3) the debt collector intentionally acted. Defendants' actions as alleged in the *Amended Complaint* are willful violations of the Co-Debtor Stay.

Defendants clearly violated the Co-Debtor Stay by engaging in mortgage foreclosure and debt collection activities while the stay was in place. Defendants could have sought relief from the Co-Debtor Stay from the bankruptcy court long before May 29, 2013, but they did not. As a consequence they violated it. Defendants' request to dismiss this count in Plaintiffs' *Amended Complaint* should be denied.

### D. The Complaint States A Claim Under The Real Estate Settlement Procedures Act.[21]

The Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601 *et seq.*, requires lenders, mortgage brokers, and servicers of home loans to provide pertinent and timely disclosures regarding the nature and costs of the real estate settlement process. The Department of Housing and Urban Development ("HUD") promulgated Regulation X, 24 C.F.R. 3500, which implements RESPA. The

---

[21] Count IV of the *Amended Complaint* is brought by Mr. Johannessen alone against BANA alone.

National Affordable Housing Act of 1990 amended RESPA to require detailed disclosures concerning the transfer, sale, or assignment of mortgage servicing. Defendants and their principals, agents, subagents and representatives are subject to the requirements of RESPA and Regulation X.

"Congress intended RESPA to be a remedial consumer-protection statute. As such, RESPA is to be construed liberally in order to best serve Congress' intent." For example, in *Rawlings v. Dovenmuehle Mortgage, Inc.*, 64 F.Supp.2d 1156 (M.D. Ala. 1999) the plaintiff brought suit against the mortgage servicer under RESPA, alleging numerous violations including failing to respond to QWRs. The court found that the correspondence did constitute QWR, and granted plaintiff's motions for summary judgment relating to this issue. The court also awarded the plaintiff actual damages resulting from travel and correspondence to the servicer, and held that mental anguish damages were recoverable as actual damages.

RESPA provides a private right of action for violation of the disclosure requirements in 12 U.S.C. §§ 2605, 2607 and 2608. Section 2605 provides for disclosures and notices relating to the assignment, sale or transfer of loan servicing. Section 2607 prohibits kickbacks and unearned fees.

12 U.S.C. § 2605(e) provides that (i) if any servicer of a federally related mortgage loan receives a QWR from an authorized agent for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days unless the action requested is taken within such period and (ii) not later than 60 days after the receipt of any qualified written request and, if applicable, before taking any action with respect to the inquiry, the servicer shall provide the authorized agent a statement of the reasons for which the servicer believes the account is correct as determined by the servicer and the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance.

The language of RESPA and Regulation X each contain the following language:

> ACTION WITH RESPECT TO INQUIRY.. Not later than 60 days (excluding legal public holidays, Saturdays and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, *before taking any action with respect to the inquiry of the borrower, the servicer shall…*

Once the putative servicer has acknowledged receipt in writing, it must proceed in one of three ways:

> (1) Correct the borrower's account and inform the borrower of these corrections in writing, which written notification must include the name and telephone number of a representative of the servicer who can provide assistance to the borrower,

> (2) Investigate and provide the borrower with a written explanation that includes the reasons the servicer believes the account is correct and the name and telephone number of an employee, office or department of the servicer that can provide assistance to the borrower, or

> (3) Investigate and provide a written explanation to the borrower of the reasons the servicer cannot obtain the information the borrower is requesting if that information cannot be obtained. When one of these options is utilized and completed, the borrower must receive their second written communication (the first being the acknowledgement of receipt letter due within 20 days) within 60 days of receipt of the borrower's original correspondence.

Defendants claim to have been engaged in the servicing of the Mortgage Loan, as defined by RESPA. 12 U.S.C. § 2605(i)(3). Assuming arguendo they are correct, which they are not given the lack of chain of title to various operative documents, Defendants have violated 12 U.S.C. § 2605(b), (c) by not providing Plaintiff with timely notice in writing of the purported assignment, sale, or transfer of the servicing of the Mortgage Loan, including the Robosigned Allonges and the MERS Assignment. Plaintiffs on several occasions called, mailed, faxed and emailed to Defendants requests for information relating to the servicing of the Mortgage Loan. Defendants have repeatedly violated 12 U.S.C. § 2605(e) by not acknowledging receipt of Plaintiffs' requests. Defendants have repeatedly violated 12 U.S.C. § 2605(e) by not responding to Plaintiffs' requests. Defendants timely received from Plaintiffs proof of hazard insurance coverage for the Real Property securing the Mortgage Loan. 12 U.S.C. § 2605(k) provides that a mortgage loan servicer shall not obtain force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance. Defendants obtained force-placed hazard insurance for the Real Property in violation of 12 U.S.C. § 2605(k). *Amended Complaint* at ¶¶ 88-94.

12 U.S.C. § 2605(k) provides that a mortgage loan servicer shall not fail to respond within 10

business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan. Defendants violated 12 U.S.C. § 2605(k) by not timely providing this information. 12 U.S.C. § 2605(f) provides that whoever fails to comply with any provision of this section shall be liable to individual borrowers for each such failure in an amount equal to the sum of any actual damages to the borrower as a result of the failure and any additional damages, as the Court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000. Defendants have charged Plaintiffs for and have collected from Plaintiffs unearned fees. *Amended Complaint* at ¶¶ 95-97.

Assuming arguendo BANA can establish with admissible evidence that it is a mortgage loan service provider, which it has yet to do, RESPA applies to the Mortgage Loan and the Mortgage Loan and the QWR. Mr. Johannessen states a claim under RESPA and Defendants' request to dismiss this count in Plaintiffs' *Amended Complaint* should be denied.

E.   **The Complaint States A Claim Under The Truth In Lending Act.** [22]

The Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., gives a debtor rights and a creditor obligations when both parties enter into a credit agreement, such as a mortgage loan, and is meant to protect consumers from fraud, predatory lending and misrepresentation of terms by creditors.

15 U.S.C. § 1641(g) requires certain disclosures to be provided by BANA to Plaintiffs when there is a change in the ownership of the Mortgage Loan. The TILA requirements require that Plaintiffs be provided notice of a new creditor, and that within 30 days of buying or being assigned the Mortgage Loan, the new creditor must notify Plaintiffs in writing the following information: (1) The identity, address and telephone number of the new creditor; (2) the date of transfer; (3) how to reach an agent or party having authority to act on behalf of the new creditor; (4) the location of the place where transfer of ownership of the debt is recorded; and (5) any other relevant information regarding the new creditor. Pursuant to TILA, 15 U.S.C. § 1641(f)(2), BANA must provide Plaintiffs the identity of the owner(s) of the Mortgage Loan or creditor(s).

---

[22]   Count V of the *Amended Complaint* is brought by Mr. Johannessen alone against BANA alone.

BANA contends that 15 U.S.C. § 1641(g) does not apply to it in this case. BANA is wrong. Section 1641(g) was part of the Helping Families Save Their Homes Act of 2009 enacted by Congress to address catastrophic, systemic failures in the nation's housing market. The effective date of that Act was May 20, 2009. *See* Pub.L. No. 111-22, § 404, 123 Stat. 1632 (May 20, 2009). BANA is correct in observing that section 1641(g) is not retroactive. However, BANA is not correct in observing that section 1641(g) does not apply to its conduct in this case. *See Eng v. Dimon*, 2012 WL 2050367, *1 (N.D. Cal. June 6, 2012) (§ 1641(g) "was not added to TILA until 2009 and does not apply retroactively *to conduct occurring before its effective date*") (emphasis added).

Albeit an invalid assignment, BANA claims its rights under the Mortgage Loan were transferred to it by MERS, i.e., the MERS Assignment (*Amended Complaint* at ¶ 17), in September 2011, or over two years *after* the effective date of section 1641(g). Albeit an invalid assignment, the MERS Assignment clearly states that MERS "does hereby grant, sell, transfer and convey unto [BANA]" whatever rights MERS has in the Mortgage Loan. A true and accurate copy of the MERS Assignment is attached hereto as **Exhibit G** and appears in the Court's records at DE 1-1, p. 66, of which Plaintiffs request judicial notice.

Defendants are not correct in their assumption that 15 U.S.C. § 1641(g) does not apply to them. The *Amended Complaint* states a claim under TILA and Defendants' request to dismiss this count in Plaintiffs' *Amended Complaint* should be denied.

F.     **The Complaint States A Claim For Fraud And Misrepresentation.**[23]

Defendants are and have been passing themselves off to Plaintiffs as legitimate owners and/or assignees of the Mortgage Loan and thus presumptively entitled to engage in debt collection and mortgage loan foreclosure activities under color of state and federal laws. Although repeatedly requested to do so, Defendants are refusing to timely provide proper documentation to Plaintiffs establishing Defendants' collective right to engage in debt collection and mortgage loan foreclosure activities against Plaintiffs. Defendants' wrongful activities and violations are detailed in the *Amended Complaint* by paragraph and,

---

[23]     Count VII of the *Amended Complaint* is brought by both Plaintiffs against both Defendants.

where appropriate, by specific statutory provision. Plaintiffs have taken action and paid money in reliance on Defendants' concealment and false representations and have clearly been damaged thereby.

Plaintiffs' claims and Defendants' wrongful conduct are alleged in a very specific manner, literally chapter and verse. If the list of Defendants' transgressions is too long that is simply because it reflects the depth, breadth and extent of Defendants' wrongdoing. The *Amended Complaint* states a claim for fraud and misrepresentation and Defendants' request to dismiss this count in Plaintiffs' *Amended Complaint* should be denied.

G. **The Complaint States Claims For Slander Of Title And Quiet Title.**[24]

1. **BANA's Use of Inapplicable and Inapposite Law.**

Defendants summarily conclude that Mr. Johannessen "has no interest in the real estate. He has no standing to assert a claim for quiet title." Defendants also believe that their perceived collective right to foreclose on property they do not have the legal right to foreclose does not put a cloud on or disparage that property's title. Again, Defendants are mistaken.

Federal law and the laws of the state of California, not Tennessee state law, govern the Mortgage Loan. Section 16 of the Deed of Trust clearly states: "Governing Law; Severability; Rules of Construction. *This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.*" (*Emphasis added*.) The Property is located in California, not Tennessee. Since the Deed of Trust purports to affect title to California land, California law must be applied to determine the effect of that instrument of title. See *Belcher v. Elliott*, 312 F.2d 245 (6th Cir. 1963); *Newman v. Hi Hat Elkhorn Coal Company*, 298 F.2d 119, rehearing denied, 302 F.2d 723 (6th Cir. 1962), cert. denied, 371 U.S. 819, 83 S.Ct. 33, 9 L.Ed.2d 59 (1962).[25]

2. **The Nature of a Quiet Title Action.**

The equitable remedy of quieting title to property is pursued through a suit to "remove a cloud," meaning an adverse claim of right or interest in the property. "A quiet title action seeks to declare the

---

[24] Count VIII of the *Amended Complaint* is brought by both Plaintiffs against BANA alone.

[25] See **Exhibit C** to the original *Complaint* for applicable California statutes governing the interpretation of contracts, e.g., the Mortgage Loan in this case.

rights of the parties in realty." "The object of the action is to finally settle and determine, as between the parties, all conflicting claims to the property in controversy, and to decree to each such interest or estate therein as he may be entitled to." *Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 305 (quoting *Yuba Invest. Co. v. Yuba Consol. Gold Fields* (1926) 199 Cal. 203, 209.). Title is quieted "as to legal interests in property." *Lechuza Villas West v. California Coastal Com.* (1997) 60 Cal.App.4th 218, 242. "A description of the parties' legal interests in real property is all that can be expected of a judgment in an action to quiet title." *Id*. at 243.

### 3. BANA's Adverse Claims and the Convoluted History of the Mortgage Loan.

Adverse claims exist as to the legal and equitable interests in the Real Property and the related Mortgage Loan. The Real Property is owned by Meridian. Meridian is owned by the Trust. As beneficiaries under the Trust, Johannessen family members, e.g., Mr. Johannessen, own beneficial interests in Meridian and the Real Property owned by Meridian, i.e., principal, income and remainder interests, i.e., the Personal Property. Meridian owns fee title to the Real Property. *Amended Complaint* at ¶ 15. Thus, although Mr. Johannessen may not have a fee simple interest in the Real Property he does have, at the very least, a remainderman's interest in the Real Property.

BANA apparently does not know who owns the Real Property. On the one hand BANA claims the Johannessens should own the real property since they allegedly transferred the Real Property to Meridian back in 2008 and the transfer should be set aside as a fraudulent transfer, which it was not. On the other hand BANA claims the Real Property is rightfully owned by Meridian, not the Johannessens. To cloud the adverse interests further, Sierra Pacific originated the Mortgage Loan, i.e., the Note and the Deed of Trust, in December 2006. Since January 2007 Freddie Mac has claimed ownership of the Mortgage Loan, likely through an assignment from Sierra Pacific on the secondary market. Freddie Mac still, to this day, claims ownership of the Mortgage Loan. BANA also claims ownership of the Mortgage Loan and the right to collect the Mortgage Loan, but BANA's ownership claim is defective. So is its claimed status as the proper holder of the Note.

Nowhere in the Real Property's chain of title does BANA appear as a proper owner or holder of the Mortgage Loan. BANA's claim to the Note is questionable due to likely fraudulent endorsements and as yet unsubstantiated assignments; its claim to the Deed of Trust is null and void due to the improper MERS assignment, which in effect assigned nothing to BANA (see, e.g., *In re Walker* (Bankr E.D. Cal., May 20, 2010, No. 10–21656-E-11) 2010 Bankr. Lexis 3781 ("Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law."); its claim to both is compromised due to the purported transfer of one without the other. *Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.")

These competing interests in the Real Property as well as the uncertainties surrounding the ownership of the Mortgage Loan cloud Plaintiffs' claims to their interests in and to the Real Property.

**4.      The Importance of a Proper and Valid Chain of Title in This Case.**

With its preferred narrative of the underlying facts BANA glosses over, or does not address altogether, the importance proper chain of title has to its ability to pursue its unlawful debt collection and foreclosure activities against Plaintiffs and the Real Property. It is axiomatic that a proper chain of title is needed to determine the junior and senior rights of any property. The Real Property in this case is no exception. See, e.g., Cal. Civ. Code § 1214 ("Every conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.").

In this case BANA does not own the Mortgage Loan and, as of yet, has not established a proper chain of title. It also is not the valid holder of the Mortgage Loan. Apropos, the importance of a proper chain of title was recently addressed and illustrated in the case of *U.S. Bank National Association v. Ibanez* (January 7, 2011) 458 Mass. 637, 2011 Mass. LEXIS 5 *("Ibanez")*. *Ibanez* dealt with loans that had been pooled into mortgage-backed securities. Two foreclosures were made in the names of Wells Fargo and US

Bank, however, neither of the banks had written mortgages. Instead, they were acting as trustees, or financial caretakers, for pools of loans made and serviced by other lenders. In *Ibanez*, the Massachusetts" Supreme Court stated:

> "We agree with the judge that the plaintiffs, who were not the original mortgagees, **failed to make the required showing that they were the holders of the mortgages at the time of foreclosure.** As a result, they did not demonstrate that the foreclosure sales were valid to convey title to the subject properties, and their requests for a declaration of clear title were properly denied." (Emphasis added.)

The *Ibanez* court stated that, for the banks to obtain the judicial declaration of clear title, they had to prove their authority to foreclose under the power of sale and show their compliance with the requirements on which this authority rests. The banks could not provide this proof. The banks had the authority to exercise the power of sale contained in the mortgages ***only*** if they were assignees of the mortgages at the time of the notice of sale and subsequent foreclosure sale. *Id.* (citing *In re Schwartz* (Bankr. D. Mass. 2007) 366 B.R. 265, 269. Furthermore, the court held that, like a sale of land itself, the assignment of a mortgage is a conveyance of interest in land that requires a writing signed by the grantor. *Id.*

In *Ibanez*, the Supreme Court of Massachusetts ruled that the defendants' foreclosures must be undone because industry securitization practices violated real estate law governing how mortgages may be transferred. Massachusetts is one of 27 non-judicial foreclosure states, California included. California courts have agreed with the reasoning in *Ibanez*. For example:

> "It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties."

*6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.* (2001) 85 Cal. App. 4th 1279, 1286; see also *In re Agard* (U.S. Bankruptcy Court, Eastern District of New York (February 10, 2011) Case No. 8-10-77338.

In the course of the bankruptcy case of *In re Agard*, a creditor sought relief from an automatic stay to foreclose on a second interest in the debtor's real property. MERS, as an intervener, argued that the

terms of its membership agreement with the original lender and its successors in interest, as well as New York state agency laws, gave MERS the authority to assign a mortgage. MERS argued that it held legal title to mortgages for its members/lenders as both "nominee" and "mortgagee of record."

In his highly critical response to MERS's request that the court analyze the MERS business model, Judge Robert E. Grossman stated:

> "The Court recognizes that an adverse ruling regarding MERS's authority to assign mortgages or act on behalf of its members/lenders could have a significant impact on MERS and upon the lenders which do business with MERS throughout the United States. . . . This Court does not accept the argument that because MERS may be involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that **this process does not comply with the law**.

*Id*. (*emphasis added*).

The Court rejected MERS arguments that it acted as nominee, mortgagee or agent adding that "in all future cases which involve MERS, the moving party must show that it validly holds both the mortgage and the underlying note in order to prove standing before this Court." *Id.*

Another case relevant to applicable California law and to these instant proceedings is the case of *In re Salazar* (U.S. Bankruptcy Court, Southern District of California, April 11, 2011) 2011 Bankr. Lexis 1187 ("*Salazar*"). In *Salazar*, debtor Salazar sought to reinstate his US Bank loan against his residence and cure his default, and creditor US Bank sought relief from stay in the bankruptcy to proceed with its unlawful detainer action. The Court held:

> "US Bank, as the foreclosing assignee, was obligated to record its interest before the sale despite MERS' initial role under the deed of trust, and this role cannot be used to bypass [California] Civil Code section 2932.5. Since US Bank failed to record its interest, Salazar had a valid property interest in his residence that is entitled to protection through automatic stay."

*Id.*

In *Salazar*, the court concluded that MERS original involvement in the loan did not provide talismanic protection against US Bank's foreclosure deficiencies, that US Bank's failure to record its beneficiary status before foreclosure left Salazar with equitable title to his residence and that Salazar had

demonstrated a prima facie case that the foreclosure sale was void. *Id.* "The borrower concern addressed by California Civil Code section 2932.5 – that it be able to identify the assignee of its loan – is more exigent, not less, than it was during the Great Depression." *Id.* The Court held:

> "The Court rejects the claim that MERS' limited role in the DOT [deed of trust] provides it carte blanche authority over the nonjudicial foreclosure process."

*Id.* See also *In re Vargas* (United States Bankruptcy Court, Central District of California, 2008) 396 B.R. 511 (denying relief from bankruptcy stay, imposing sanctions and stating that MERS had failed to prove that it was the proper party to enforce the note and that MERS was not able to prove the identity of the current note holder); In re Walker (United States Bankruptcy Court, Eastern District of California, 2010) 2010 Bankr. Lexis 3781 (claimant of note was not allowed to assert claim of property when it failed to present evidence that the nominee (MERS) had any interest in the note to transfer to claimant); *Mertens v. Berendsen* (1931) 213 Cal. 111, 113 (stating that "Marketable title must be so far free from defects as to enable the holder, not only to retain the land, but possess it in peace, and if he wishes to sell it, to be reasonably sure that no flaw or doubt will arise to disturb its market value").

In an unsuccessful attempt to remedy the chain of title debacle, many lenders (including Fannie Mae and Freddie Mac) turned to businesses ("foreclosure mills") that specialized in quick processing of thousands of foreclosures for banks. Defendant Quality Loan appears to be one such business.[26] This conduct at foreclosure mills reached fraudulent levels and caused the fifty (50) states Attorneys' General to convene a committee to investigate this fraudulent activity by mortgage servicers. Additionally, the Office of the Comptroller of Currency, the Federal Reserve, the Office of Thrift Supervision and the Federal

---

[26] Quality Loan appears to be owned and/or operated by Bounlet Louvan, who was served with process as Quality Loan's registered agent for service of process in this case. Pursuant to Fed. R. Evid. 201 Plaintiff respectfully requests that this Court take judicial notice of **Exhibit D** to the response to BANA's first motion to dismiss. In this case BANA repeatedly intimates, with no evidence of course, that Plaintiffs sought postponement of the original foreclosure sale date for the Real Property for purposes of delay. This also is not true. The underlying facts will reveal that the initial trustee sale date was postponed for two reasons: (1) Plaintiffs contacted Quality Loan and provided BANA with proof of funds to cure the deficiency on the Mortgage Loan and (2) Quality Loan and BANA were concerned with Plaintiffs' assertions that BANA and Quality Loan did not comply with, among other things, the FDCPA, the Rosenthal Act, California's foreclosure statutes, Plaintiffs' RESPA QWR (which BANA received over five months prior to the original trustee sale date), and the Co-Debtor Stay.

Deposit Insurance Corporation negotiated with the largest U.S. mortgage servicers and signed consent decrees to improve foreclosure procedures.[27]

BANA states that "[t]here is a valid lien on the property," but it is not one to which either Defendant is entitled. BANA states that "[a] default occurred." Notwithstanding, the Mortgage Loan is not one on which any Defendant is entitled to collect or seek foreclosure of the real property. BANA states that "[i]nstituting a foreclosure is not a slander of title," but doing so when one does not have the right to do so is. BANA states that "[o]btaining an assignment of the lien from MERS is not an action that constitutes a slander of title. Perhaps under normal circumstances, but not when the purported assignment of a real property interest or a mortgage loan is invalid and void *ab initio*.

Plaintiffs are seeking and expecting through their quiet title action a "description of the parties' legal interests in [the Real Property]" and nothing more. Count VIII of the *Amended Complaint* states a claim upon which relief can be granted.

### H.    Plaintiffs Are Entitled To Injunctive Relief And An Accounting.

BANA states, "There is simply no equity in favor of Plaintiffs that would justify enjoining BANA from foreclosing on the property or seeking to enforce its rights under a judicial foreclosure to enable it to seek a deficiency against Johannessen." Whether there is or is not equity in the Real Property is a matter of evidence, not attorney argument. Defendants' arguments against Plaintiffs' request for injunctive relief and an accounting are based on an inaccurate, and apparently contested, factual premise as to, among other things, BANA's status as a debt collector under the FDCPA, the nature of the Johannessens' Mortgage Loan (it's a consumer debt), and the QWR reporting requirements under RESPA, with which BANA did not comply.

BANA also is taking the alarming position that even though it contends it is the true owner and/or holder of the Mortgage Loan it has no concomitant responsibility to Plaintiffs, one of whom BANA claims is its borrower, to account to Plaintiffs for the providence of the Mortgage Loan and BANA's activities

---

[27]    Pursuant to Fed. R. Evid. 201 Plaintiff respectfully requests that this Court take judicial notice of **Exhibit 4** to the original Complaint (¶ 11), **Exhibits 5** to the original Complaint (¶¶ 12-13), **Exhibit 9** to the original Complaint (¶ 24), and **Exhibit 10** to the original Complaint (¶ 27).

underlying the financial history of the Mortgage Loan, e.g., billings, payments, interest, insurance, security interests, etc., as properly sought by Plaintiffs by way of the RESPA QWR and other means and as otherwise required by statute. It is this same institutional stonewalling that brought about BANA's legal exposure in the first place.

## V

## CONCLUSION

Plaintiffs *Amended Complaint* states sufficient factual allegations, accepted as true, to state claims for relief that are plausible on their face. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). Plaintiffs have satisfied their pleading requirements vis-à-vis Defendants' improper activities; violation by violation, statutory provision by statutory provision. The length of the *Amended Complaint* does not diminish or detract from the magnitude of Defendants' unlawful conduct.

Plaintiffs respectfully submit that Defendants' *Motions to Dismiss* should be denied and that this case should be allowed to proceed on its merits and let the admissible evidence chips fall where they may. Out of an abundance of caution, however, should the Court believe Defendants' arguments and ascertain that dismissal of one or more of Plaintiffs' claims fail to state a plausible claim then Plaintiffs respectfully move for leave to amend to cure the deficiencies. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002).

Respectfully submitted,

By: /s/ *Scott D. Johannessen*
Scott D. Johannessen, BPR # 26767
LAW OFFICES OF SCOTT D. JOHANNESSEN
3200 West End Avenue, Suite 500
Nashville, TN 37203
Telephone: 877.863.5400
E-Mail: scott@sdjnet.com
Web: www.sdjnet.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.01, the undersigned hereby certifies that on the 23rd day of September 2013 she caused a true and correct copy of the following document:

RESPONSE TO MOTIONS TO DISMISS

to be delivered to the following persons/entities appearing of record herein via electronic mail through the Court's ECF system:

H. Frederick Humbracht                    Frank R. Olson
Bradley Arant Boult Cummings LLP          McCurdy & Candler, LLC
1600 Division Street, Suite 700           Six Piedmont Center, Suite 700
Nashville, TN 37203                       3525 Piedmont Road, N.E.
                                          Atlanta, GA 30305


By:   /s/ *Lorrie A. Johannessen*
          Lorrie A. Johannessen