# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### December 14, 2011 Session

## LVNV FUNDING, LLC AS ASSIGNEE OF SEARS GOLD MASTERCARD
### v.
## KEVIN MASTAW

**Appeal from the Circuit Court of Davidson County**
**No. 10C-2671   Joe P. Binkley, Jr., Judge**

---

**No. M2011-00990-COA-R3-CV - Filed April 30, 2012**

---

This appeal concerns the collection of credit card debt. The plaintiff, a subsequent purchaser of the debt, filed this collection action against the appellant debtor. On appeal, the appellant debtor argues, *inter alia*, that the trial court erred in admitting into evidence various documents from a previous owner of the debt, pursuant to the hearsay exception for business records under Tenn. R. Evid. Rule 803(6). We hold that two of the exhibits were not appropriately admitted into evidence under the business records exception. Without those exhibits, we find that the evidence preponderates against the trial court's judgment in favor of the creditor, and reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

James E. Kirby, Antioch, Tennessee for Defendant/Appellant Kevin Mastaw

Byron C. Hamlett, Nashville, Tennessee for Plaintiff/Appellee LVNV Funding, LLC as assignee of Sears Gold MasterCard

# OPINION

## FACTS AND PROCEEDINGS BELOW

In December 2009, Plaintiff/Appellee LVNV Funding, LLC, ("LVNV") as assignee of Sears Gold MasterCard, filed a civil warrant in the General Sessions Court of Davidson County against Kevin J. Mastaw ("Mastaw"). The warrant asserted that Mastaw owed $15,101.23 plus pre- and post-judgment interest on his MasterCard credit card. The General Sessions Court conducted a trial in June 2010 and a judgment in favor of LVNV was entered in the amount of $16,406,77.

Mastaw filed an appeal to the Circuit Court of Davidson County ("trial court"). The *de novo* trial was held on March 21, 2011.[1] The record does not contain a transcript of the trial, but the trial court entered an approved Statement of the Evidence. Our recitation of the facts is taken from this Statement.[2]

At the outset of the trial, Mastaw made an oral motion to bar LVNV from proceeding with the debt collection against him, arguing that LVNV is a purchaser of accounts and engaged in debt collection as defined under Section 62-20-101, *et seq*. As such, Mastaw contended, LVNV was required to be licensed as a collection agency before attempting to collect the alleged debt.[3] The trial court reserved its ruling on the motion until it heard the evidence regarding this issue.

LVNV's first witness was Kimberly W. Parks ("Parks"), an employee of Resurgent Capital Services ("Resurgent") located in Nashville, Tennessee. Parks was the custodian of records for Resurgent. She testified that Resurgent is the attorney in fact for LVNV, and that Sherman Financial Group ("Sherman"), is the parent corporation for both Resurgent and

---

[1] Tenn. Code Ann. § 27-5-108(c) (2000).

[2] We note that Mastaw's appellate argument on one issue is recited from his proposed statement of evidence, which was rejected by the trial court, instead of the statement of the evidence that was approved by the trial judge. Unless an issue is raised on appeal regarding the statement of the evidence, we will not consider a statement of the evidence proffered by a party and expressly rejected by the trial judge.

[3] Mastaw made another oral pretrial motion to bar LVNV from proceeding because it did not have a certificate of authority to transact business in the state of Tennessee pursuant to Tennessee Code Annotated § 48-25-102(a). Ultimately, the trial court held that Mastaw did not show that LVNV is a foreign corporation, and even if he had, the trial court held, the collection of debts does not constitute "transacting business" under Section 48-25-101, and thus LVNV was not required to obtain a certificate of authority. This issue is not raised on appeal, so we do not address it.

-2-

LVNV. Parks said that Sherman purchased a number of Sears Gold MasterCard debt accounts from Citibank of South Dakota ("Citibank").

Through Parks' testimony, LVNV sought to introduce into evidence six exhibits regarding Mastaw's alleged debt. Mastaw objected to all on the basis that the records contained hearsay. The six exhibits are:

> Exhibit 1: "Limited Power of Attorney" between LVNV and Resurgent, dated June 3, 2009.
>
> Exhibit 2: "Assignment and Assumption Agreement" between Citibank and Sherman dated July 2, 2008, and is signed by David L. Zimbeck, vice president and general counsel of Citibank.[4]
>
> Exhibit 3: "Sale and Assignment" between Sherman and LVNV, dated July 31, 2008, signed twice by Les Gutierrez as authorized representative of both Sherman and LVNV.[5]
>
> Exhibit 4: "Plaintiff's Affidavit of Indebtedness and Ownership of Account," signed by Tobie Griffin[6] as authorized representative of LVNV, dated October 21, 2009. Griffin's affidavit states that she has knowledge of LVNV's creation and maintenance of its normal business records, and that the business records on Mastaw's account include a "compilation of information provided upon acquisition and obtained since acquisition," which indicate that Mastaw's account is a result of Sears' extension of credit to Mastaw on August 1, 1985. The affidavit then states that the account was owned by Citibank and then later sold to LVNV's assignor on July 1, 2008. The affidavit asserts that the ownership rights were assigned to LVNV, including the right "to collect the purchased balance owing of $15,101.23 plus any additional accrued interest."

---

[4] Exhibit 2 references an agreement between Citibank and Sherman dated January 18, 2008 which describes the accounts being transferred from Citibank to Sherman in Section 1.2 of that agreement. This agreement is not included in the record; however, Exhibit 2 states that Sherman transfers to LVNV and LVNV's successors and assigns "the Accounts described in Section 1.2 of the Agreement."

[5] Exhibit 3 references a separate agreement dated April 29, 2005, setting forth the terms of the sale; it identifies the receivable assets as delivered to LVNV with this document. Exhibit 3 also attaches a document entitled "Receivable File- Portfolio IDs," dated July 31, 2008, highlighting portfolio number 11474.

[6] The record fails to specify the gender of Tobie Griffin. For the purpose of this appeal, we will assume Griffin is female.

Case 3:13-cv-00296 Document 46-5 Filed 09/23/13 Page 3 of 12 PageID #: 914
EXHIBIT E:000003

> Based on the business records maintained on Mastaw's account, Griffin's affidavit claims the balance of $15,101.23 is "duly owed" by Mastaw.
>
> Exhibit 5: Affidavit of Tobie Griffin as authorized representative of Sherman, dated January 21, 2010, stating that LVNV now owns Mastaw's account, and that the account was acquired from Sherman. The affidavit states that all of Sherman's interest in the Account vested in LVNV when it was acquired from Sherman.
>
> Exhibit 6: Compilation of Mastaw's credit card Statements.[7]

As indicated in the proffered exhibits, Parks explained that LVNV is an asset holding company, holding the Sears Gold MasterCard accounts purchased by Sherman, and Resurgent is the assignee of LVNV. Parks said that Citibank originally serviced Mastaw's Sears Gold MasterCard account, until Sherman purchased it. As of July 2, 2008, Mastaw's Sears Gold MasterCard account had an indebtedness of $15,101.23.

On cross-examination, Parks conceded that she had no knowledge of Citibank's records, how the Sears Gold MasterCard accounts were created, or what charges Mastaw made. Parks explained that LVNV purchased both the contract and the debt, but said that she did not have a copy of the original contract between Sears Gold MasterCard and Mastaw creating the account, and did not know whether Sears had accurately calculated Mastaw's indebtedness in accordance with the terms of that contract. She said that Citibank originally purchased the Sears Gold MasterCard accounts before they were transferred to Sherman. Finally, Parks testified that her employer Resurgent was licensed to collect debts in Tennessee and recited the license number. She did not have a copy of Resurgent's license.

The trial court held that Parks was "the custodian or other qualified witness" as required under Rule 803(6) of the Tennessee Rules of Evidence, commonly referred to as the "business records exception," and that all six exhibits were records of regularly conducted business activity. The trial court concluded that the source of information contained in all six exhibits and the method and circumstances of preparation showed that all six records were trustworthy. All six exhibits were admitted pursuant to Rule 803(6).

The trial court denied Mastaw's oral pretrial motion to bar LVNV from going forward because it determined that Mastaw failed to prove LVNV lacked the required license. The trial court credited Parks' testimony that Resurgent, the attorney in fact for LVNV, had a

---

[7] Exhibit 6 indicates that payments of approximately $500 were made on the account in July, September, October, and November 2007, with no payments after November 2007.

-4-

Tennessee license to operate as a collection agency, and the trial court found this sufficient for LVNV to proceed.

LVNV then called Mastaw to testify. Mastaw did not recall his Sears Gold MasterCard account number, but acknowledged that the address which appeared on the Sears Gold MasterCard statements was his former address. He admitted that he had a Sears Gold MasterCard account, but said that he had not used it since 2001 and could not recall when he last made a payment on the account or whether the account was paid off. He testified that he believed the account was "closed out" in 2005. Mastaw did not recall owing $15,101.23 on the account, and did not know whether he owed $15,101.23 to Sears. Mastaw acknowledged that he had reviewed Exhibit 6, the compilation of his MasterCard statements.

Mastaw's testimony concluded the evidence submitted by LVNV. Mastaw did not put on any evidence.

At the conclusion of the testimony, the trial court noted that, after reviewing the compilation of his credit card statements in Exhibit 6, Mastaw failed to testify either that the document was not his Sears Gold MasterCard account or that he did not owe the $15,101.23 balance on the Exhibit. In light of this, the trial court found that Exhibit 6 was Mastaw's Sears Gold MasterCard account, and the balance owed on the card was $15,101.23.

On March 31, 2011, the trial court entered an order finding that Mastaw was indebted to LVNV in the amount of $15,101.23, plus the costs and post-judgment interest at the statutory rate of 10% per annum. Mastaw now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Mastaw argues that the trial court erred in admitting Exhibits 2-6 into evidence, because (1) Parks is not a custodian or other qualified witness as required by Rule 803(6) of the Tennessee Rules of Evidence ("Rule 803(6)"), and (2) Exhibits 2-6 were not records of regularly conducted activity as required under Rule 803(6).[8] Mastaw also argues that the trial court erred in finding that LVNV is a collection service as defined by Tennessee Annotated Code § 62-20-102(3), and that the requirement of a debt collection license was met because Resurgent, the attorney in fact for LVNV, is licensed by the State of Tennessee as a debt collector.

---

[8] Mastaw concedes that Exhibit #1 "Limited Power of Attorney" executed between LVNV and Resurgent was properly introduced into evidence.

-5-

In a non-jury case such as this one, we review the trial court's factual findings *de novo* with a presumption of correctness, unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d) (2011); *Morrison v. Allen*, 338 S.W.3d 417, 425 (Tenn. 2011). The trial court's conclusions of law are accorded no such presumption of correctness. *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008).

"The determination of whether a hearsay statement is admissible through an exception to the hearsay rule is left to the sound discretion of the trial judge." *Arias v. Duro Standard Prods. Co.*, 303 S.W.3d 256, 262 (Tenn. 2010). An appellate court does not interfere with a trial court's decision to admit or exclude evidence absent an abuse of discretion. *State v. Franklin*, 308 S.W.3d 799, 809 (Tenn. 2010); *State v. Lewis*, 235 S.W.3d, 136, 141 (Tenn. 2007). A trial court abuses its discretion "when it 'applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining.' " *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)); *see also Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004).

## ANALYSIS

### *Admissibility of Documents*

We consider first Mastaw's argument that the trial court erred in admitting into evidence Exhibits 2-6 on his alleged indebtedness. Mastaw contends that the trial court erred in finding that Parks was a custodian of the records at issue or was otherwise qualified under Tenn. R. Evid. 803(6). Mastaw also argued that Exhibits 2-6 all contained hearsay not subject to the business records exception in Rule 803(6). We find that the appeal may be determined based on the admissibility of the documents. We focus on the admissibility of Exhibits 4 and 5, both affidavits by Tobie Griffin.

Mastaw argues that both documents contain inadmissible hearsay. He contends that Exhibit 4 "was prepared by a business entity removed from the witness [Parks]," and that Exhibit 5 "was prepared by a business entity two entities removed from the witness [Parks] . . . ." Mastaw insists that both documents were created by a business entity other than Resurgent, Parks' employer, and are not admissible under the business records exception to the hearsay rule. Tenn. R. Evid. 803(6).

In response, LVNV argues that a debt purchaser may submit into evidence documents prepared by predecessor entities if the debt purchaser integrated the documents into its own record, citing *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338 (Fed. Cir. 1999). LVNV stresses that the purpose of Rule 803(6) is to facilitate the use of business records in

-6-

litigation and eliminate the need to call numerous witnesses to testify about the preparation of the record, citing **Campbell v. Union Planters Bank**, No. E1999-01910-COA-R3-CV, 2000 WL 1100219, at *2; 2000 Tenn. App. LEXIS 510, at *5 (Tenn. Ct. App. Aug. 2, 2000). It contends that the "key question is whether there is any indicia of lack of trustworthiness," and contends without citing to authority that "the burden shifted to [Mastaw] to present testimony or evidence that would obviate the trustworthiness of . . . the exhibits." LVNV addresses all of the exhibits in the aggregate, without addressing the particulars of any single exhibit, and maintains that the trial court did not err in admitting all of them into evidence under Rule 803(6).

In an action to collect a debt, the plaintiff creditor bears the burden of proving the existence of the debt and that the debtor is indebted to the creditor in a certain amount. **Bellsouth Adver. & Publ. Corp. v. Wilson**, No. M2006-00930-COA-R3-CV, 2007 WL 2200170, at *5; 2007 Tenn. App. LEXIS 496, at *12 (Tenn. Ct. App. July 30, 2007). In this case, because LVNV is not the original creditor as to Mastaw's Sears Gold MasterCard, LVNV must also prove by a preponderance of the evidence that it is the owner of Mastaw's debt. **See Cach, LLC v. Askew**, 358 S.W.3d 58, 62 (Mo. 2012) (citing **Midwestern Health Mgmt., Inc. v. Walker**, 208 S.W.3d 295, 298 (Mo. App. 2006)) (requiring "every link in the chain between the party to which the debt was originally owed and the party trying to collect the debt must be proven by competent evidence in order to demonstrate standing.") **See also Cuda & Assoc., LLC v. Lumpkin**, No. NNHCV9095031901, 2011 WL 6413674, at *1, 2; 2011 Conn. Super. LEXIS 3025, at *2, 6-7 (Conn. Super. Ct. Nov. 29, 2011) ("the plaintiff must demonstrate . . . that it is the valid assignee of an existing debt" and that the record was *made* in the regular course of business). Therefore, we look at whether LVNV met its burden of proving that Mastaw is in fact indebted to LVNV, and the amount of such debt.

The Statement of the Evidence indicates that LVNV's primary witness, Parks, is employed by LVNV's attorney in fact, Resurgent, and testified as the custodian of records for Resurgent. As such, Parks testified from the exhibits about the various transactions that resulted in LVNV purportedly owning Mastaw's debt, as well as Mastaw's credit card charges, payments, and the amount of the alleged remaining debt. Parks' testimony on direct and on cross-examination indicates no personal knowledge of the matters contained in the disputed exhibits, but rather that she was relating in her testimony the information in the exhibits. Consequently, we focus on the admissibility of the exhibits on which Parks relied.

It is undisputed on appeal that the exhibits at issue in this appeal all contained hearsay. **See** Tenn. R. Evid. 801(c) (2011). All were admitted into evidence under the hearsay exception

-7-

set forth in Rule 803(6), commonly referred to as "the business records exception."[9] Tenn. R. Evid. 803(6) (2011); **Simpkins v. Simpkins**, No. M2010-02550-COA-R3-CV, 2012 WL 628011, at *4; 2012 Tenn. App. LEXIS 131, at *11-12 (Tenn. Ct. App. Feb. 27, 2012). Rule 803(6), entitled "Records of Regularly Conducted Activity," states as follows:

> The following are not excluded by the hearsay rule:
>
> * * *
>
> (6) A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

---

[9]Under Rule 902(11) of the Tennessee Rules of Evidence, a business record may also be authenticated through an accompanying affidavit, with the following requirements:

> The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by an affidavit of its custodian or other qualified person certifying that the record:
>
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of and a business duty to record or transmit those matters;
>
> (B) was kept in the course of the regularly conducted activity; and
>
> (C) was made by the regularly conducted activity as a regular practice.
>
> A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

Tenn. R. Evid. 902 (11) (2011). In this case, the trial court relied only on Rule 803(6), with Parks as the custodian, so we do not address Rule 902(11).

-8-

Tenn. R. Evid. 803(6) (2011). The rationale underlying the business records exception is that "records regularly kept in the normal course of business are inherently trustworthy and reliable." *Arias v. Duro Standard Prods. Co.*, 303 S.W.3d 256, 262 (Tenn. 2010) (quoting *Alexander v. Inman*, 903 S.W.2d 686, 700 (Tenn. Ct. App. 1995). *See also* Neil P. Cohen, Sarah Y. Sheppeard, & Donald F. Paine, *Tennessee Law of Evidence* § 8.11[2] (4th ed. 2000) (*"Tennessee Law of Evidence"*). The exception is intended "to facilitate the use of business records by eliminating the expense and inconvenience of calling numerous witnesses involved in the preparation and maintenance of the records" and "unduly disrupting the business's activities." *Alexander*, 903 S.W.2d at 700; *Tennessee Law of Evidence* § 8.11[11].

As noted above, both Exhibit 4 and Exhibit 5 are affidavits by Tobie Griffin. In Exhibit 4, Griffin describes herself as an "authorized representative for LVNV." She does not otherwise describe her relationship with LVNV. The affidavit refers generally to LVNV's "normal business records, including computer records of its accounts receivables." However, the affidavit does not identify the particular records to which it refers, and none are attached to it. Griffin's affidavit states that the information in the unspecified records "was regularly and contemporaneously maintained during the course of [LVNV's] business."[10] It states that the unspecified "records provided to [LVNV] have been represented to include information provided by the original creditor," such as the debtor's identity and the identity of the original creditor. The affidavit does not state who made such a representation.

After listing an account number, Griffin's affidavit asserts that the number is for Mastaw's account with Sears, based again on the unidentified records. It notes that "[s]aid business records" indicate that Mastaw's account later came to be owned by Citibank, and that Citibank later assigned a numbered "Portfolio" to LVNV's "assignor," again unidentified, and that the "Portfolio" included Mastaw's account. Griffin's affidavit then asserts that the ownership rights were assigned to LVNV, and states a balance of $15,101.23, plus interest. The affidavit concludes by asserting that this amount "is justly and duly owed" by Mastaw to LVNV.

In Exhibit 5, Griffin represents herself to be an "[a]uthorized [r]epresentative of [Sherman]." She does not explain her relationship with Sherman, or how she came to be an "authorized representative" of both LVNV and Sherman. In this affidavit, Griffin lists an account number that is purportedly Mastaw's account, says that it is owned by LVNV, and explains that LVNV acquired the account from Sherman.

---

[10] Despite this language, there is no indication in the record that Griffin's affidavit was submitted pursuant to Tenn. R. Evid. 902(11), or that the trial court considered it as such.

-9-

In *Arias v. Duro Standard Products*, a worker's compensation case, the Tennessee Supreme Court considered whether a physician's report was admissible under the business records exception. *Arias*, 303 S.W.3d at 262. The physician who made the report was not the claimant's treating physician. *Id.* at 263. The report was the result of the physician's independent medical examination of the claimant, in which the physician opined as to the cause of the claimant's condition and assigned a percentage of permanent partial impairment. *Id.* at 259.

The *Arias* Court held that the trial court had erred by admitting the physician's report into evidence under Rule 803(6). The Court observed: "An extraordinary report prepared for an irregular purpose, particularly when prepared with litigation in mind, may not be made in the regular course of business and may be inadmissible as a business record under Rule 803(6)." *Id.* at 263 (quoting Neil P. Cohen, et al., Tennessee Law of Evidence § 8.11[6] at p. 8-113 (5th ed. 2005)). Noting that the physician's opinion in the report "was sought solely for the purpose of establishing causation and impairment in this workers' compensation litigation," the Court held that this fact undermined the trustworthiness usually associated with records admitted under Rule 803(6). *Id.* It held that the report was improperly admitted into evidence.

This interpretation of Rule 803(6) is not new. Documents prepared specifically for the subject litigation are "properly excluded because of motivational concerns arising from the fact that they were generated for litigation purposes," as opposed to records generated for business purposes. 2 Kenneth S. Broun, *McCormick on Evidence* § 288 (6th ed. 2009). The United States Supreme Court addressed this issue in the seminal case of *Palmer v. Hoffman*, 318 U.S. 109; 63 S. Ct. 477 (1943), involving a railroad crossing accident. The record at issue in *Palmer* was a written statement by the engineer of the train, who died prior to trial. The railroad sought to introduce the engineer's statement into evidence under the business records exception, arguing that the railroad routinely took such statements after accidents. *Palmer*, 318 U.S. at 111.

The Court in *Palmer* recognized the need for the business records exception, lest the burden of collecting a debt be made unduly onerous.[11] *Id.* at 112. It found, however, that the

---

[11]The *Palmer* Court quoted Judge Learned Hand:

> The routine of modern affairs, mercantile, financial and industrial, is conducted with so extreme a division of labor that the transactions cannot be proved at first hand without the concurrence of persons, each of whom can contribute no more than a slight part, and that part not dependent on his memory of the event. Records, and records alone, are their adequate repository, and are in practice accepted as accurate upon the faith of the routine

(continued...)

-10-

Case 3:13-cv-00296 Document 46-5 Filed 09/23/13 Page 10 of 12 PageID #: 921
EXHIBIT E:000010

engineer's statement "[fell] into quite a different category" because it was "not a record made for the systematic conduct of the business as a business." *Id.* at 113. The Court explained:

> [I]t is manifest that in this case those reports are not for the systematic conduct of the enterprise as a railroad business. Unlike payrolls, accounts receivable, accounts payable, bills of lading and the like[,] these reports are calculated for use essentially in the court, not in the business. Their primary utility is in litigating, not in railroading.

*Id.* at 114. Therefore, the engineer's statement was deemed inadmissible under the business records exception.

In the case at bar, the affidavits executed by Griffin were clearly prepared specifically for the instant litigation, to trace the assignments of Mastaw's debt, establish LVNV's ownership of the debt and the amount due from Mastaw. They do not incorporate by reference or otherwise summarize or interpret documents that are prepared in the normal course of regularly conducted business activity. We must conclude that Exhibits 4 and 5 do not properly fit within Rule 803(6), the business records exception to the hearsay rule, and that the trial court erred in admitting them into evidence pursuant to this exception.

Having concluded that Exhibits 4 and 5 were erroneously admitted into evidence under Rule 803(6), we find the remaining evidence in the record insufficient to establish that Mastaw is

---

[11](...continued)
> itself . . . . Unless they can be used in court without the task of calling those who at all stages had a part in the transactions recorded, nobody need ever pay a debt, if only his creditor does a large enough business.

*Palmer*, 318 U.S. at 112 n.2 (quoting *Mass. Bonding & Ins. Co. v. Norwich Pharmacal Co.*, 18 F.2d 934, 937 (2d Cir. 1927).

-11-

indebted to LVNV and the amount of that debt.[12]  This holding pretermits all other issues raised on appeal.[13]

## CONCLUSION

The decision of the trial court is reversed.  Costs on appeal are assessed against Appellee LVNV Funding, LLC, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[12]In ***Fusner v. Coop Contruct. Co., LLC***, 211 S.W.3d 686 (Tenn. 2007), the Supreme Court held that a compilation of business records, compiled for specific litigation, may be admissible as a "summary" of "voluminous writings" under Tenn. R. Evid. 1006, "so long as the data included in a compilation otherwise satisfies the business records exception . . . ." *Id.* at 693.  We note that Exhibit 6 in this case, is a compilation of Mastaw's MasterCard statements.  However, even if Exhibit 6 is admissible under the principle in ***Fusner***, it is not sufficient in and of itself because it does not "link up" LVNV with the debt nor does it show LVNV's ownership of the debt.  The assignment agreements in Exhibits 2 and 3 show the trail of assignment of debts to LVNV, but do not sufficiently identify Mastaw's debt as among those assigned.

[13]Having determined that this appeal should be decided on the inadmissability of Exhibits 4 and 5, this Court expressly declines to determine whether the trial court erred in finding Parks was a qualified witness to authenticate the inherited documents at issue.  However, we note that Tennessee courts have broadly defined the term "qualified witness" as a witness with "personal knowledge of the business's record-keeping methods and can explain same to the court" and is not "required to have personal knowledge of the facts recorded, nor to have been personally involved in preparing the documents or even know who did." ***See Beal Bank S.S.B. v. RBM Co.***, No. E2001-00520-COA-R3-CV, 2002 WL 43604, at *2; 2002 Tenn. App. LEXIS 21, at * 5-6 (Tenn. Ct. App. Jan. 11, 2002) (citing *Alexander*, 903 S.W.2d at 700).