UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SCOTT JOHANNESSEN and<br>MERIDIAN VENTURE PARTNERS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>QUALITY LOAN SERVICE<br>CORPORATION,<br><br>Defendant. | Case No. 3:13-cv-00296<br><br>Chief Judge William J. Haynes, Jr.<br>Magistrate Judge Juliet Griffin |

## AMENDED INITIAL CASE MANAGEMENT ORDER

### I. JURISDICTION AND VENUE

1.  **Status of Service of Process.** Plaintiffs contend that service of process has been completed on all parties. Defendant believes that it has only been served by certified mail which may be insufficient under California law and FRCP 4. Defendant further contends that venue is improper in Tennessee as its principal office, "nerve center", and registered agent are all in San Diego, California and as venue should not be determined by a plaintiff's residence.

2.  **Status of Responsive Pleadings.** Defendant Quality Loan Service Corporation ("Quality Loan") filed its answer to Plaintiffs' First Amended Complaint on January 24, 2014 (Docket No. 74). Plaintiffs' Second Amended Complaint was filed on March 17, 2014 (Docket No. 85). By agreement, Quality Loan filed its answer to Plaintiffs' Second Amended Complaint on March 31, 2014 (Docket No. 87). Defendants Bank of America, N.A., and BAC Home Loans Servicing, LP (collectively, "BANA") settled Plaintiffs' claims against BANA and on January

10, 2014, BANA was dismissed from this case (Docket No. 64). Quality Loan did not settle Plaintiffs' claims against Quality Loan and Quality Loan remains as the sole Defendant herein.

3. **Jurisdiction.** Plaintiffs contend that jurisdiction is not disputed. Defendant contends that due to possible service infirmities, this Court may lack *in personam* jurisdiction over Defendant.

## II. PARTIES' THEORIES OF THE CASE

1. **Plaintiffs' Theory of the Case.**

This is a civil action concerning residential mortgage foreclosure practices used in conjunction with the collection of consumer debts.

Plaintiff Scott Johannessen and his wife (the "Johannessens") and their children have lived in Tennessee since 2008. In December 2006, prior to moving to Tennessee and while residents of California, the Johannessens obtained a mortgage loan (the "Mortgage Loan"). The Mortgage Loan includes a promissory note ("Note") secured by certain residential real property located in Sacramento, California (the "Property"), which security interest is evidenced by a deed of trust ("Deed of Trust"). The Johannessens purchased the Property in 2001 as their personal residence, not for investment purposes. The Johannessens obtained the Mortgage Loan in 2006 not to make any money or to purchase the Property, but to take cash out of their former residence for various personal, family and household purposes. The loan documents confirm this.

Plaintiff Meridian Venture Partners LLC ("Meridian") owns the Property. Meridian is a Tennessee limited liability company. Mr. Johannessen, its original member, formed Meridian in 2008 as a Family-Owned Non-Corporate Entity, i.e., a "FONCE," pursuant to Tenn. Code Ann. 67-4-2008(a)(11), as part of a family estate plan. Meridian's sole member is the Johannessen Family 2008 Irrevocable Trust (the "Trust"), also established in 2008. The Trust is a Tennessee

Asset Protection Trust pursuant to the Tennessee Investment Services Act of 2007 (the "Act"). T.C.A. § 35-16-101, *et seq.*; *see* 2007 Tenn. Pub. Acts 144. The Trust is an irrevocable trust with a spendthrift clause. BANA consented to the transfer of the Property to Meridian and was notified of the transfer the same month it occurred.

Quality Loan initiated its unlawful debt collection activities against Plaintiffs in the summer of 2012. Until July 2012 the same tenants had occupied the Property for several years. The tenants vacated the Property after Quality Loan improperly initiated its debt collection action against Plaintiffs in violation of, among other things, the FDCPA, the Bankruptcy Code automatic stays, and various California foreclosure laws. The Property has not been able to generate any income since Quality Loan initiated its unlawful debt collection efforts.

Pursuant to Sixth Circuit law, "mortgage foreclosure is debt collection" under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq. Glazer v. Chase Home Finance, LLC*, 704 F.3d 453 (6th Cir. 2013). And under the FDCPA, "*any* debt collector who fails to comply with *any* provision of this subchapter with respect to *any person* is liable to such person ..." 15 U.S.C. § 1692k. The FDCPA preempts any state law which is inconsistent with the mandates of the FDCPA itself. 15 U.S.C. § 1692n.

Quality Loan now claims not to be a debt collector, but it clearly is. A foreclosure mill based out of southern California, Quality Loan has of late vigorously attempted to distance itself from its own admissions, publicly advertised labels and consumer-directed notices confirming that it is indeed a debt collector. The fact that Quality Loan may also be a substitute trustee spearheading the mortgage foreclosure process is irrelevant. See, e.g., *Wilson v. Draper & Goldberg*, 443 F.3d 373, 378-79 (4th Cir. 2006) ("defendants' foreclosure action was an attempt to collect a 'debt,' defendants are not excluded from the definition of 'debt collector' under [the FDCPA] merely because they were acting as trustees foreclosing on a property

pursuant to a deed of trust, and defendants can still be 'debt collectors' even if they were also enforcing a security interest").

Further, pursuant to the Bankruptcy Code, the commencement or continuation of debt collection proceedings against a debtor in bankruptcy is specifically prohibited by two bankruptcy automatic stays, i.e., the debtor stay of 11 U.S.C. § 362(a) and the co-debtor stay of 11 U.S.C. § 1301(a). Without obtaining bankruptcy court relief from the automatic stays, as BANA belatedly did almost a full year *after* Quality Loan initiated its mortgage foreclosure proceedings, Quality Loan nonetheless proceeded with its debt collection activities in clear violation federal law.

Other federal and state claims are asserted by Plaintiffs against Quality Loan in their Second Amended Complaint, providing bases for further relief. See, e.g., *Mik v. Federal Home Loan Mortgage Corporation*, Case No. 12-6051 (6th Cir., filed February 7, 2014) (a violation of federal law can support a state law claim, even when – or, perhaps, especially when – there may be no private right of action under a federal statute).

Plaintiffs seek appropriate relief as more fully set forth in their Second Amended Complaint.

2.  **Quality Loan's Theory of the Case.**

Quality Loan was merely the Trustee hired by the Loan Servicer, Bank of America, to initiate nonjudicial proceedings in California on this California property, pursuant to California's nonjudicial foreclosure statutory scheme which provides for appointment of Trustees to conduct such sales. See California Civil Code, §2920 *et seq.* Quality Loan contends that it is not a debt collector, that Quality Loan is not Plaintiffs' creditor, that Quality Loan's regular business is not the collection of debts owed to another, and Quality Loan claims no interest in either this property or the debt secured by it. An entity whose principal purpose is the enforcement of

security interests, not the collection of debts, is not a debt collector subject to the FDCPA. *Lewis v. ACB Bus. Services, Inc.*, 135 F.3d 389, 411 (6th Cir. 1998).

As a matter of law Quality Loan, as a mere Trustee, is not liable to the Plaintiffs under any theory of recovery, as California law explicitly recognizes. See, e.g., California Civil Code, §2924l(a), (b)(providing for a declaration of nonmonetary status when a Trustee is sued over a Deed of Trust); California Civil Code, §2924(b).

Plaintiffs' theories of recovery also fail since the property in question was rental property and the purpose of the loan was to refinance a loan on rental property. 15 U.S.C. §1692a(5); *Turner v. Cook,* 362 F.3d 1219, 1226-27 (9th Cir. 2004).

While Plaintiffs assert a violation of bankruptcy stay, jurisdiction over a claimed violation of the stay is pursuant to 28 U.S.C. § 157 and must be asserted in the bankruptcy case of the debtor, not in a separate action brought by the codebtor. Plaintiffs also forget their own admissions herein, namely that Johannessen asserts he has no interest in the property, as all interest therein was allegedly transferred to Meridian. A foreclosure proceeding as to the Cagney Court Property was not stayed as to Meridian. Meridian was a non-party to that bankruptcy proceeding and the institution of foreclosure against Meridian, the property owner, is not an attempt to collect on the debt of either the debtor or the codebtor.

Plaintiffs' generic "fraud" allegations fail the Rule 9(b) test. *Simpkins v. SunTrust Mortg., Inc.* 2012 WL 3095570 (E.D. Tenn.2012).

Lastly, as to any claim for "quiet title", Johannessen has no interest in the subject real estate by his own admission and lacks legal standing. *Paczko v. Suntrust Mortgages, Inc.*, 2012 WL 4450896 at *3 (Tenn.Ct.App. 2012); *Indus. Dev. Bd. of City of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn.Ct.App.1995); *Hall v. Fowler*, No. W2006-00385-COA-R3-CV, 2007 WL 4554651, at *5 (Tenn.Ct.App. Dec. 28, 2007). Similarly, under California law, a mortgagor

cannot maintain an action to quiet title without satisfying the antecedent debt. *Mix v. Sodd*, 178 Cal.Rptr. 736, 738-39, 126 Cal.App.3d 386 (Cal.App., 1981).

Plaintiffs were and are unquestionably in serious monetary default on their loan and have neither the intent nor the ability to cure said default. Nowhere do they credibly deny this fact. The causative agent of any alleged "damages" is that default, not Quality Loan's compliance with California law in attempting to foreclose on the Property. No foreclosure has been completed on that property due to this lawsuit.

### III. SCHEDULE OF PRETRIAL PROCEEDINGS

A.  **Rule 26(a)(1) Disclosures.**

The parties shall make their Rule 26(a)(1)(A) through (E) disclosures within (30) days from the date of the Court's entry of this Order.

B.  **Meeting of Counsel and Parties to Discuss Settlement Prospects.**

Within ninety (90) days from the date of the Court's entry of this Order counsel and clients are required to have a face-to-face meeting to discuss whether this case can be resolved without further discovery proceedings. If a party, other than a natural person, is involved in this litigation, a representative who has the authority to settle shall attend this meeting on behalf of that party. After the meeting is conducted, counsel shall prepare a report and file it with the Court reflecting that the parties met and that the parties made a good faith effort to evaluate the resolution of this case. This report should also include whether the parties believed that one of the Alternative Dispute Resolution ("ADR") procedures under the Local Rules would further assist the parties in resolving this matter.

C.  **Other Pretrial Discovery Matters.**

As determined at the case management conference on _August 1, 2014_, this action is set for a jury trial on _August 4, 2015_

If this action is to be settled, the Law Clerk shall be notified by noon, _Monday 7/3/15_. If the settlement is reached thereafter resulting in the non-utilization of jurors, the costs of summoning jurors may be taxed to the parties dependent upon the circumstances.

A pretrial conference shall be held _July 20, 2015 at 3:00 p.m._. A proposed pretrial order shall be submitted at the pretrial conference.

All discovery shall be completed on or before _January 31, 2015_. All written discovery shall be submitted in sufficient time so that the response shall be in hand or before _January 30, 2015_. All discovery related motions and statements shall be filed on or before _February 13, 2015_. No motions related to discovery or for a protective order shall be filed until a discovery/protective order dispute conference has taken place and the attorneys of record shall attend and meet, face-to-face, in an effort to resolve the dispute and a jointly signed discovery/protective order dispute statement is submitted setting forth precisely the remaining issues in dispute and the reasons why those issues remain unresolved.

All dispositive motions[1] and Daubert motions shall be filed on or before _March 15, 2015_ and any response thereto shall be filed on or before _April 15, 2015_. Any reply shall be filed on or before _April 30, 2015_.

Any motion to amend the pleadings or join parties shall be filed in sufficient time to permit any discovery necessary because of the proposed amendment to be obtained within the time for discovery. No amendments will be allowed if to do so will result in a delay in the disposition of the action by requiring an extension of the discovery deadline.

There shall be no stay of discovery pending disposition of any motion.

---

[1] No memorandum in support of or in opposition to any motion shall exceed twenty (20) pages. No reply shall be filed to any response unless invited by the Court.

The response time for all written discovery and requests for admissions is reduced from thirty (30) to twenty (20) days.

Interrogatories pursuant to Rule 33, Federal Rules of Civil Procedure, shall be limited to sixty (60) such interrogatories. Subparts of a question shall be counted as additional questions for purposes of the overall number.

On or before _November 1, 2014_ the plaintiff shall declare to the defendants (not to file with the Court) the identity of his expert witnesses and provide all the information specified in Rule 26(a)(2)(B).

On or before _December 1, 2014_, the defendants shall declare to the plaintiff (not to file with the Court) the identity of their expert witnesses and provide all the information specified in rule 26(a)(2)(B).

Any supplements to expert reports shall be filed on or before _January 16, 2015_. There shall not be any rebuttal expert witnesses.

To reduce the needless expenditure of time and expense, there shall not be any discovery depositions taken of expert witnesses. A party may, however, serve contention interrogatories and requests for admissions upon another party's expert. If these discovery methods prove ineffective, a party may move to take the deposition of the expert. In a diversity action, a treating physician is considered a fact witness unless the physician expresses opinions beyond the physician's actual treatment of the party.

For expert witnesses, the expert's Fed. R. Civ. P. 26(a)(2) report is considered to be the expert's direct examination testimony at trial. If an expert expects to expound his or her testimony beyond the wording of the expert's report, the party calling the expert shall inform the opposing party with the specifics of that expounding testimony at least 15 days prior to the dispositive motion deadline.

These rules on experts are to ensure full compliance with Rule 26(a)(2); to enable the parties to evaluate any Daubert challenges prior to filing dispositive motions; to avoid conflicts with the experts' schedules; and to avoid the costs of expert depositions.

It is so ORDERED.

ENTERED this 1st day of August, 2014.

WILLIAM J. HAYNES, JR.
United States Chief District Court Judge